**Delores HARMON, individually and as Executrix of the Estate of Ralph Harmon, Plaintiff,**

v.

**UNITED STATES of America, Acting THROUGH the FARMERS HOME ADMINISTRATION, UNITED STATES DEPARTMENT OF AGRICULTURE, Thomas Lloyd, Assistant U.S. Attorney, Dallas Tonsager, State Director of the Farmers Home Administration, Defendants.**

Civ. No. 94–3046.

United States District Court,
D. South Dakota,
Central Division.

July 24, 1995.

Robert R. Schaub, Chamberlain, SD, for plaintiff.

Thomas A. Lloyd, Asst. U.S. Atty., Pierre, SD, for defendants.

## MEMORANDUM OPINION AND ORDER

JOHN B. JONES, Senior District Judge.

Ralph and Delores Harmon were debtors in a Chapter 12 bankruptcy reorganization which has been completed. The Farmers Home Administration ("FmHA") loaned money to debtors and had a second lien on real estate owned by the debtors. The real estate has been sold, and FmHA claims a secured interest in the proceeds. Plaintiff asserts that FmHA's lien was "stripped" in the bankruptcy action, and defendants assert that it was not.

Plaintiff's amended complaint seeks to quiet title to proceeds from the sale of the real estate. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 2410.

The FmHA seeks to recover $374,617 plus interest on its debt, beyond the amounts received pursuant to the bankruptcy action. The property was valued at $156,748 in 1988 in the bankruptcy proceedings but was sold for $730,000 in 1994, so it is obvious that either the property was undervalued in the bankruptcy proceedings or there was a substantial increase in value between 1988 and 1994. After payment of the undisputed claims to these proceeds and sales costs, net cash of $587,798 remains in escrow pending resolution of the title question presented here. Both sides moved for Summary Judgment and a hearing was held on the out-standing motions on April 27, 1995. For the reasons below, summary judgment will be granted to the Plaintiff.

### Background

There are no material factual disputes in this case. Ralph Harmon executed second mortgages on real estate used in his farm and ranch operation in favor of the FmHA. He and his wife Delores later sought protection from creditors under Chapter 12 of the Bankruptcy Code. The Chapter 12 Plan confirmed by the Bankruptcy Court sets forth the FmHA's agreement on the amount of its secured and unsecured claims. The Plan provides for scheduled payments on the secured claim over 30 years and states: "Following the debtors making their thirtieth (30th) payment, the FmHA shall release any claim it may have." *In re Ralph Harmon,* No. 87–30138–INH (Bankr.D.S.D.), First Amended Chapter 12 Reorganization Plan at 4.

The unsecured claim was to be paid from disposable net income, pursuant to the Bankruptcy Code, pro rata among all unsecured creditors. A preliminary section of the confirmed Chapter 12 Plan states: "[T]he holder of any claim, secured or impaired, shall retain its pre-petition lien securing such claim until such time that the claim is fully paid. Following payment of the claim, the holder of the claim shall release the lien." First Amended Chapter 12 Reorganization Plan at 2.

FmHA objected to the proposed discharge sought by the debtors and a settlement was reached on payment of the unsecured claim. FmHA agreed to accept $75,000 as its portion of disposable income payable to creditors. The agreed upon payments were made and the debtors were given a discharge.

Ralph Harmon later developed cancer and listed certain real estate for sale. After his death, his estate sold the property in 1994. FmHA then asserted its lien against the property, claiming that the lien survived the discharge in bankruptcy and was payable in full from the proceeds.

The sale was consummated. From the proceeds, payment of sales costs, the remain-

ing balance on the original contract for deed, and FmHA's secured claim as determined in the bankruptcy proceedings have been made. The remainder, $587,798, was placed in escrow. FmHA seeks to recover the unpaid amount of its original lien plus interest thereon.

## Issue Presented

The question presented in this case is whether the payment of both the secured portion and the required plan payments on the unsecured portion of the FmHA claim extinguish the lien on the real property sold by the debtor. This issue only arises because the property was sold for a price substantially greater than the land's agreed upon value in the bankruptcy proceedings (which established the amount of FmHA's secured claim) at the time of the plan confirmation. Both the secured and unsecured FmHA claims under the plan have been paid in full and the debtor has been discharged.[1]

## Discussion

■ A lien is defined under the Bankruptcy Code as "a charge against or interest in property to secure payment of a debt." 11 U.S.C. § 101(37). Chapter 12 and the other reorganization chapters of the Code set forth a framework for establishing the value of the debtor's property at the time of plan confirmation and establishing the rights of the parties claiming interests in that property. The reorganized debtor retains property "free and clear of all claims and interests of creditors, equity security holders, and of the general partners of the debtor," for all property "dealt with by the plan." 11 U.S.C. §§ 1141(c), 1227(c) & 1327(c).

A lien for a debt that is greater than the value of the secured property is bifurcated into a secured portion and an unsecured portion under 11 U.S.C. § 506(a) and the claims are then treated differently under a reorganization plan. The secured claims must be paid in full but are limited to the value of the secured property at the time of plan confirmation. 11 U.S.C. §§ 1129, 1222 & 1322. In

a Chapter 12 plan, all unsecured claims are paid pro rata from the debtor's disposable income; all such income which must be committed to these payments. 11 U.S.C. § 1225(b)(1).

FmHA's claim to the sale proceeds is premised on the application of two cases which hold that debtors are discharged of personal liability in bankruptcy but unsecured liens may be asserted against the property itself after discharge. In *Dewsnup v. Timm*, 502 U.S. 410, 112 S.Ct. 773, 116 L.Ed.2d 903 (1992), the Supreme Court ruled that the unsecured portion of a claim against real property was not "stripped" or limited to the value of the property in a Chapter 7 case. The ruling held, in effect, that a lien on property can be asserted after a Chapter 7 discharge against the property, but not against the debtor personally.

In *Nobelman v. American Savings Bank*, — U.S. ——, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993), the Supreme Court held, as a matter of statutory construction, that 11 U.S.C. § 1322 specifically prohibits lien stripping on residential property liens. Thus, unsecured portions of a security interest on a Chapter 13 debtor's house survive discharge intact and may be asserted against the property following the discharge.

Both of these cases are distinguishable. *Dewsnup* specifically limited its holding to Chapter 7 cases and expressed no opinion as to its application in reorganization cases. *Dewsnup*, 502 U.S. at 416–17 n. 3, 112 S.Ct. at 778 n. 3. "Chapter 12 was specifically designed to facilitate the stripping down of liens on family farms with repayment of reduced debt by installments under a plan of reorganization—in other words, exactly what the *Dewsnup* debtors were trying to do." *In re Dever*, 164 B.R. 132 (Bankr.C.D.Cal.1994) (*in dicta*). Unlike Chapter 7, Chapter 12 clearly allows a plan to "modify the rights of holders of secured claims...." 11 U.S.C. § 1222(b)(2). The secured claim is modified under Chapter 12 but paid in the same

---

1. The discharge of a debtor in bankruptcy does not mean that all debts are paid in full according to the plan. Instead, it means that the debtor has made all payments under the plan, other than, inter alia, payments to holders of allowed secured claims provided for under 11 U.S.C. § 1222(b)(5).

amount as would theoretically be received by the creditor in a Chapter 7 liquidation.

*Nobelman* involved a specific provision of Chapter 13 not implicated here; in fact, a careful reading of *Nobelman* indicates that it infers a result opposite to FmHA's conclusion. In recognizing that residential security interests are given specific protection from lien stripping in § 1322, the availability of lien stripping for other security interests must exist or there would be no need for such protection. *Nobelman*, —— U.S. at ——, 113 S.Ct. at 2112 (Stevens, J., concurring).

Counsel for FmHA has not cited any Chapter 12 cases clearly supporting its position and the Court has found none on its own. Chapter 12 cases that have addressed the issue have held that lien stripping is available after *Dewsnup. In re Leverett,* 145 B.R. 709, 713 (Bankr.W.D.Okla.1992) (lien stripped at discharge; decided prior to *Nobelman* ); *In re Kinder,* 139 B.R. 743 (Bankr. W.D.Okla.1992) (same); *In re Heine,* 141 B.R. 185 (Bankr.D.S.D.1992) (recognizing lien stripping, pre-*Nobelman* ).

The majority of cases that address the issue of lien stripping in reorganization cases after *Dewsnup* and *Nobelman* have concluded that lien stripping of unsecured claims is consistent with statutory provisions and not precluded by these two cases. *See Wade v. Bradford,* 39 F.3d 1126 (10th Cir.1994) (Chapter 11); *see also, In re Dever,* 164 B.R. at 138–44 (Chapter 11); *Ford Motor Credit Co. v. Lee,* 162 B.R. 217 (D.Minn.1993) (Chapter 13, non-residential lien); *cf. In re Taffi,* 144 B.R. 105, 114 (Bankr.C.D.Cal.1992) (applying *Dewsnup* to Chapter 11 and finding no lien stripping available; pre-*Nobelman* ). To hold otherwise would allow all liens to survive discharge in bankruptcy in Chapter 12 cases. "The survival of all liens would preclude the finality necessary to the success of such rehabilitative efforts, and would render § 506(a) virtually meaningless in [Chapter 12 and 13] cases." *In re Leverett,* 145 B.R. 709, 713 (Bankr.W.D.Okla.1992).

■ Plaintiff also seeks a determination that the action of the FmHA and the named defendants in asserting a lien on the sale proceeds was abusive, arbitrary, capricious and malicious and not predicated upon any good faith belief or any existing case law or authority. The Court declines to do so. There is no Eighth Circuit case deciding whether lien stripping occurs in Chapter 12 bankruptcy cases, and FmHA and the named defendants are entitled to use this case in an effort to obtain such an appellate ruling if they desire to do so.

### Conclusion

The Court declines to follow the invitation of FmHA to render the reorganization and discharge provisions of Chapter 12 meaningless. Having been paid the full amount of the secured claim and its agreed upon portion of the unsecured claim as established in the bankruptcy case, FmHA has no further claim to the proceeds of the real estate in question. Pursuant to the provisions of the Code and the confirmed Chapter 12 plan, FmHA's lien is released and extinguished.

Therefore, upon the record herein,

IT IS ORDERED:

(1) That Defendants' Motion to Dismiss, Doc. 7, and Amended Motion to Dismiss, Doc. 9, are denied.

(2) That Defendants' Motion for Summary Judgment, Doc. 26, is denied.

(3) That the United States' Motion to Exceed Page Limitation of Brief, Doc. 25, is granted.

(4) That Plaintiff's Motion for Summary Judgment, Doc. 13, is granted.

(5) That FmHA has no lien on the real estate sales proceeds at issue and Plaintiff is entitled to all sums held in escrow.

(6) That the actions of the FmHA and the named defendants in asserting a claim against the sale proceedings for the unpaid amounts on its lien are not abusive, arbitrary, capricious, or malicious.

(7) That disbursal of funds will be stayed pending any appeal.