**In re Richard Lynn KEENER, Debtor.**

**Donna Christie, Trustee, Plaintiff,**

v.

**First State Bank of Stratford, B.A. Donelson, and Rick Reinhart, Defendants.**

**Bankruptcy No. 00–20774–7. Adversary No. 01–2003.**

United States Bankruptcy Court, N.D. Texas, Amarillo Division.

Oct. 1, 2001.

lation of the stay, if it is in operation.

David M. Jones, Sprouse, Smith & Rowley, Amarillo, TX, for plaintiff.

Steven Lee Hoard, Mullin, Hoard & Brown, Amarillo, TX, for defendant.

### MEMORANDUM OPINION

ROBERT L. JONES, Bankruptcy Judge.

The court considers the parties' cross-motions for summary judgment. The claims of both Donna Christie, the Trustee and Plaintiff, and the Defendants, the First State Bank of Stratford (FSB), B.A. Donelson (Donelson), and Rick Reinhart (Reinhart), arise from a foreclosure sale conducted April 4, 2000. The Trustee contends that FSB, Donelson, and Reinhart failed to remit to the Debtor, Richard Lynn Keener, $200,590.00 of "excess" proceeds realized from the sale. FSB and the other Defendants argue the $200,590.00 was properly credited to the Debtor's obligations at the bank.

Under Rule 56 of the Federal Rules, a party may obtain summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); *Stults v. Conoco, Inc.*, 76 F.3d 651, 654 (5th Cir.1996). The court may render summary judgment on the entire case, on the issue of liability alone, or on certain issues and not others. FED. R.CIV.P. 56(c) and (d).

From the summary judgment evidence submitted by the parties, the court finds the following facts are material and undisputed.

On January 22, 1997, Lana and Richard Keener pledged farm land (the "Keener Farm Land") to FSB in a Deed of Trust filed of record at Volume 315, Page 264 of the Real Property Records of Sherman County, Texas (the "Deed of Trust"). The Keener Farm Land consists of approximately 799 acres of land in Sherman County, Texas. It secured a promissory note signed the same day by Lana and Richard Keener in the original principal amount of $300,000.00. On February 6, 1997, Lana and Richard Keener executed a second promissory note, which renewed the January 22, 1997 note. This second promissory note (the "Keener Farm Land Note") is

the note ultimately foreclosed on by FSB. Pursuant to a Final Decree of Divorce, Lana Keener, on January 7, 1998, conveyed her interest in the Keener Farm Land to Richard Keener by Special Warranty Deed.

In addition to the Keener Farm Land Note, Richard Keener was also indebted to FSB under four other loans secured by personal property: (1) Loan No. 23646 dated November 21, 1997, in the original principal amount of $275,000.00 (the "Crop/Equipment Note"); (2) Loan No. 22347 dated May 6, 1996, in the original principal amount of $59,000.00 (the "Reinke Sprinkler Note"); (3) Loan No. 23418 dated August 5, 1997, in the original principal amount of $78,500.00 (the "Lockwood Sprinkler Note"); and (4) Loan No. 22708 dated October 28, 1996, in the original principal amount of $18,000.00 (the "John Deere Disc Note") (collectively referred to as the "Other Notes"). The Keener Farm Land secured payment of the Keener Farm Land Note, and Richard Keener's crops, equipment, and irrigation systems secured payment of the Other Notes.[1]

On February 10, 1999, Richard Keener filed a Chapter 12 bankruptcy proceeding. On May 11, 1999, he filed his Chapter 12 Plan of Reorganization, which provided that FSB would retain its lien on the Keener Farm Land Note and that each of the Other Notes would remain secured by the property by which they were secured pre-petition. On October 26, 1999, Richard Keener filed his Second Amended Plan of Reorganization, which was confirmed on January 11, 2000. The Second Amended Plan provided that the Other Notes were additionally secured by the Keener Farm Land. However, FSB could not foreclose the Keener Farm Land until after first foreclosing the personal property collateral securing the Other Notes, assuming a deficiency remained. Finally, the Second Amended Plan contemplated execution of new documents to memorialize the agreement.[2] On February 24, 2000, Richard Keener's Chapter 12 case was dismissed.

On February 28, 2000, FSB sent Richard Keener a Notice of Default and Notice of Foreclosure on the Keener Farm Land Note asserting an amount owed of $346,610.00. The Notice of Foreclosure scheduled a foreclosure sale for April 4, 2000, of the Keener Farm Land under the Deed of Trust. It described only the Keener Farm Land as "property to be sold." Finally, the Notice of Foreclosure provided, in paragraph 5 entitled "Obligations Secured," that the Deed of Trust secured "any and all present and future indebtedness of Richard L. Keener." The Deed of Trust, however, contained no such provision.

On April 3, 2000, Rick Reinhart was appointed as Substitute Trustee under the Deed of Trust and on April 4, 2000, the foreclosure sale was held. Reinhart, as Substitute Trustee, conducted the sale and subsequently prepared and signed the Foreclosure Sale Deed which listed the Keener Farm Land as the property sold. Richard Keener did not attend the foreclosure sale. During the Foreclosure Sale, Reinhart announced that the sale would be subject to unpaid ad valorem taxes of approximately $7,800.00 and that the property to be sold included the Keener Farm Land and the Lockwood sprinkler system located and installed on the Keener Farm Land. The Foreclosure Sale Deed lists a sales price of $547,200.00. The successful bid was entered by Reinhart on behalf of

---

1. Keener's homestead secured yet another note, Loan No. 23699.

2. It is undisputed that no new documents were ever executed.

FSB, followed by his conveyance of the Keener Farm Land to FSB through execution and recording of the Foreclosure Sale Deed.

FSB's $547,200.00 bid was credited as follows: (1) to Richard Keener's unpaid debt on the Keener Farm Land Note (Loan No. 22941); (2) to the unpaid amount remaining on the Lockwood Sprinkler Note (Loan No. 23418); (3) to the unpaid amount remaining on the Reinke Sprinkler Note (Loan No. 22347); and (4) to the unpaid amount on the Crop/Equipment Note (Loan No. 23646). The total amount credited to Richard Keener's debts, $555,000.00, was more than the $547,200.00 sales price obtained at the foreclosure sale. There is no dispute that Keener had defaulted on his obligations to FSB.

On June 28, 2000, FSB began foreclosure proceedings on Richard Keener's homestead.[3] On July 28, 2000, Richard Keener filed for protection under Chapter 7 of the Bankruptcy Code. On October 11, 2000, the Chapter 7 Trustee, Donna Christie, filed this adversary proceeding against FSB, B.A. Donelson, and Rick Reinhart, the Substitute Trustee, seeking to recover the excess proceeds from FSB. The Trustee claims that the amount owed on the Keener Farm Land Note, as referenced in the Foreclosure Sale Deed, was $346,610.00, and the amount of the sale was $547,200.00, leaving a remainder of $200,590.00 that should be turned over to the Trustee.

On March 12, 2001, Keener signed an affidavit concerning the foreclosure sale and his relationship with FSB. He states in the Affidavit as follows: "I never revoked my agreement, as embodied in the [Chapter 12] Plan to have [the Other Notes] secured by the Keener Farm Land."

### *Discussion*

The issue before the court is whether FSB's crediting (and Reinhart's payment) of the excess $200,590.00 to the Other Notes, rather than remitting such excess to Keener, constitutes a fraudulent conveyance under section 548 of the Bankruptcy Code, a breach of contract, or a wrongful foreclosure.

■  At the heart of the Trustee's claims is her contention that the Other Notes were not secured by the Keener Farm Land under the Deed of Trust. If they were, the Trustee has no viable cause of action. On the other hand, if the Keener Farm Land did not secure the Other Notes, FSB is left with its claims that Keener consented or agreed to application of the excess proceeds or, alternatively, if Keener did not consent, Keener has no viable claim because he suffered no damages.

FSB's position is premised on the prior confirmed Chapter 12 plan, which effectively bootstrapped the bank's secured position by providing that the Keener Farm Land secured not only the Keener Farm Land Note, but the Other Notes as well. The Trustee argues that the terms of the confirmed plan, and any agreements thereto, become a nullity once the case was dismissed. FSB contends that section 349(b) of the Bankruptcy Code refutes the Trustee's argument. This provision provides as follows:

(b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—

(1) reinstates—

---

**3.**  See note 1 *supra*.

(A) any proceeding or custodianship superseded under section 543 of this title;

(B) any transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or preserved under section 510(c)(2), 522(i)(2) or 551 of this title; and

(C) any lien voided under section 506(d) of this title;

(2) vacates any order, judgment, or transfer ordered, under section 522(i)(1), 542, 550, or 553 of this title; and

(3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C.A. § 349(b). FSB argues that confirmed plans are left unaffected by a dismissal because section 349(b) does not specifically include confirmation orders within the types of orders that are vacated. Congress's intent, FSB contends, is expressed by its omission of confirmation orders.

■■■■ The terms of a confirmed plan in Chapter 12 are binding on the debtor and on each of the debtor's creditors and, if the debtor is a corporation or partnership, on each of the debtor's equity security holders and partners. *See* 11 U.S.C. § 1227(a). The order of confirmation acts as res judicata on all matters addressed by the plan. *See First Nat'l Bank v. Allen*, 118 F.3d 1289 (8th Cir.1997); *In re Watkins*, 240 B.R. 735 (Bankr.C.D.Ill.1999). Given the res judicata effect of confirmation, the terms of the plan may not be collaterally attacked or otherwise invalidated unless confirmation is revoked under 11 U.S.C. § 1230 (if confirmation procured by fraud), or the case is either dismissed or convert-

ed. *See* COLLIER ON BANKRUPTCY, ¶ 1227.01[1] (15th Ed.2000) *citing* 11 U.S.C. § 349(b); *Harmon v. U.S.*, 184 B.R. 352 (D.S.D.1995); *In re Nash*, 765 F.2d 1410 (9th Cir.1985) (holding that dismissal of a Chapter 13 case vacates a confirmed plan). Collier on Bankruptcy further states:

The result of confirmation to a creditor is that the debtor's obligation to the creditor after confirmation is adjusted in the manner set forth in the plan. The adjustment is permanent and not just for the duration of the case, *unless the case is dismissed or converted.*

COLLIER ON BANKRUPTCY, ¶ 1227.01[1] (15th Ed.2000) (emphasis added).

The Ninth Circuit's opinion in *Nash* is particularly instructive. The *Nash* court looked to section 1327, Chapter 13's counterpart to section 1227, in addressing the effect of dismissal on a confirmed Chapter 13 plan. *In re Nash*, 765 F.2d at 1413. The *Nash* court reasoned:

Section 1327(a) states that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." Section 1327(a) must be read in conjunction with 11 U.S.C. § 1307(b), which provides that "[o]n request of the debtor at any time ... the court shall dismiss a case under [Chapter 13]." Under § 1307(b), a debtor has an absolute right to dismiss a Chapter 13 petition. A debtor is not barred by res judicata from listing debts in a later Chapter 13 petition that were listed in a previous Chapter 13 case which was dismissed without prejudice and without obtaining a discharge of the debts.

*Id.*[4] (citations omitted). By holding that "dismissal effectively vacated the ... confirmed plan," the Ninth Circuit rejected the argument that the debtors were bound by the terms of the confirmed plan after dismissal. *Id., citing In re Doyle,* 11 B.R. 110 (Bankr.E.D.Pa.1981) (once Chapter 13 case is converted to Chapter 7, order confirming Chapter 13 plan is no longer in force).

FSB fails to address section 349(b)(3), which adds a catch-all provision to the specific terms set out in section 349(a) & (b)(1) & (2), and provides:

> (b) Unless the court, for cause, orders otherwise, a dismissal of a case other than under section 742 of this title—
>
> . . .
>
> (3) revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title.

11 U.S.C. § 349(b)(3).

The *Nash* court invoked section 349(b)(3), as well, stating that

> A Chapter 13 dismissal "revests the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C. § 349(b)(3). The legislative history of § 349(b) states that "[t]he basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." S. Rep. No. 989, 95th Cong., 2d Sess. 49, reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 5835. We have previously stated that § 349 "obviously contem-

plates that on dismissal a bankrupt is reinvested with the estate, subject to all encumbrances which existed prior to the bankruptcy." *In re Income Property Builders, Inc.,* 699 F.2d 963, 965 (9th Cir.1982) (per curiam).

*Id.*

The court notes that section 349 specifically provides the courts some flexibility by prefacing with, "[u]nless the court, for cause, orders otherwise...." 11 U.S.C. § 349(b). The Senate and House Reports state that "[w]here there is a question over the scope of the subsection, the court will make the appropriate orders to protect rights acquired in reliance on the bankruptcy case." HR Rep. No. 595, 95th Cong., 1st Sess. 338 (1977); S Rep. No. 989, 95th Cong.2d Sess. 48–49 (1978), U.S.Code Cong. & Admin.News, 1978, 5787, 5834–35, 6294. Clearly, the drafters intended that a dismissal would return the bankrupt to its pre-petition status "as far as practicable," while also protecting those parties that relied, to their detriment, on the provisions of the confirmed plan. *In re Nash,* 765 F.2d at 1414.

FSB further buttresses its position by attempting to analogize the effect of dismissal of a Chapter 11 case to that of a Chapter 12 case. Significantly, the effect of confirmation of a plan varies between the two chapters. *See* 11 U.S.C. §§ 1141, 1227. Confirmation of a Chapter 12 plan does not result in a discharge being granted to the debtor as does confirmation of a Chapter 11 plan. *See* 11 U.S.C. §§ 1228, 1141; Collier on Bankruptcy, ¶ 1227.01[2] (15th Ed.2000). According to section 1141(d), confirmation of a Chapter 11 plan results in a discharge and the debtor's obligations are governed by the terms of the confirmed plan. 11 U.S.C. § 1141. In

---

4. Section 1208(b), Chapter 12's counterpart to section 1307(b), likewise gives the debtor an absolute right to dismiss.

contrast, in Chapter 12 (as well as in Chapter 13), the debtor's discharge is conditional upon the debtor's completion of the plan as confirmed. *See* 11 U.S.C. §§ 1228(a), 1328(a); *Rowley v. Yarnall*, 22 F.3d 190 (8th Cir.1994).

■ This distinction justifies a different result in Chapters 12 and 13 than in Chapter 11. The debtor is discharged upon confirmation in Chapter 11, thus the reorganized debtor is, and should be, bound by the terms of the confirmed plan. As a post-confirmation dismissal in Chapter 12 occurs prior to discharge, the confirmed plan in a dismissed case should not, as a general rule, bind the debtor or his creditors.

■ The case law interpreting the effect of a dismissal is consistent with a plain reading of the statute and its legislative history. Since rights that the debtor acquires as a result of bankruptcy are usually an extension of the debtor's ability to abide by terms of the Bankruptcy Code, the debtor who is unwilling or unable to comply with the Code generally should not receive the benefits of bankruptcy once the case is dismissed. *See In re Derrick*, 190 B.R. 346 (Bankr.W.D.Wis.1995). When a bankruptcy case is dismissed without the debtor having obtained a discharge, the consequences of the bankruptcy petition are negated, and the parties are restored to their rights and positions as they existed prior to the filing of the bankruptcy case. *See In re Irons*, 173 B.R. 910 (Bankr.E.D.Ark.1994). Unless the court indicates otherwise, the general effect of

an order of dismissal is to restore the status quo ante; it is as though the bankruptcy case had never been brought. *See In re Lewis & Coulter, Inc.*, 159 B.R. 188 (Bankr.W.D.Pa.1993). Dismissal of a bankruptcy case operates to reinstate the status of interests of debtor and his creditors to their status quo ante. *See In re Lawson*, 156 B.R. 43 (9th Cir. BAP 1993). To the extent possible, dismissal of bankruptcy petition reverses what has transpired during bankruptcy. *See In re Newton*, 64 B.R. 790 (Bankr.C.D.Ill.1986).[5]

Under the facts of this case, the court rejects FSB's argument that the prior confirmed plan survives dismissal. The court therefore turns to the Trustee's claims of fraudulent conveyance under section 548, wrongful foreclosure, and breach of contract.

*Fraudulent Conveyance under 11 U.S.C. § 548*

■ For a trustee in bankruptcy to avoid a transfer as fraudulent under section 548(a)(2), four elements must be satisfied: (1) the transfer must have involved property of the debtor; (2) the transfer must have been made within one year of the filing of the petition; (3) the debtor must not have received reasonably equivalent value in exchange for the property transferred; and (4) the debtor must have been insolvent, been made insolvent by the transaction, be operating or about to operate without property constituting reasonable sufficient capital, or be unable to pay debts as they become due. *See* 11 U.S.C. § 548(a)(2); *In re United Energy Corp.*, 944 F.2d 589, 594 (9th Cir.1991). The

5. *But see In re TNT Farms*, 226 B.R. 436 (Bankr.D.Idaho 1998). Bankruptcy court held secured creditor had first priority to crop proceeds of Chapter 12 debtor arising from adequate protection liens provided in cash collateral orders issued by bankruptcy court during debtor's first bankruptcy case, but only to extent of cash collateral orders, even

though prior case was dismissed. The court noted that section 349(b) dictates the effect of dismissal "[u]nless the court, for cause, orders otherwise.... This provision therefore ... allows the court, under these appropriate circumstances, to adjust the strict results of dismissal here." *Id.* at 442.

Trustee argues that the foreclosure sale was a fraudulent conveyance because FSB failed to give reasonably equivalent value for the property foreclosed. Instead of remitting the excess proceeds recovered at the foreclosure sale back to Keener, FSB applied the excess proceeds to other debt that Keener had outstanding with FSB. However, section 548 provides that "value" includes "property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor." 11 U.S.C. § 548(d)(2)(A).

Keener received reasonably equivalent value at the foreclosure sale because the total sum recovered from the sale was credited to him.[6] Immediately following the foreclosure sale on April 4, 2000, FSB applied $346,610.00 to the Keener Farm Land Note and then applied the excess proceeds, $200,590.00, to the Other Notes. As section 548 specifically provides that "value" includes satisfaction of present or antecedent debt, the Trustee's fraudulent conveyance claim is denied.

*Wrongful Foreclosure and Breach of Contract*

Having determined there is no section 548 cause of action, the court addresses the claims of wrongful foreclosure and breach of contract. Texas law is not altogether clear concerning the distinctions between a claim for wrongful foreclosure and one for breach of contract where the alleged breach arises from a deed of trust. Upon the facts and circumstances of this case, however, the court concludes that breach of contract is the appropriate, more directly applicable claim.

▮▮▮ A person who suffers loss or material injury because of irregularities in the foreclosure sale is entitled to maintain a suit for wrongful foreclosure. *See Wieler v. United Sav. Ass'n of Texas,* 887 S.W.2d 155, 158 (Tex.App.—Texarkana 1994, writ denied). The purpose of a wrongful foreclosure action is to protect mortgagors against those sales where, through mistake, fraud, or unfairness, the sale results in an inequitably low price. *See* 30 Tex.Jur.3d *Deeds of Trust and Mortgages* § 177 (1998). The Texas Supreme Court has held that, in order for a finding of wrongful foreclosure, "[t]here must be evidence of irregularity, though slight, which irregularity must have caused or contributed to cause the property to be sold for a grossly inadequate price." *American Sav. & Loan Ass'n of Houston v. Musick,* 531 S.W.2d 581, 587 (Tex.1975). The Texas cases that address this issue all require "irregularities in the foreclosure sale" that result in a grossly inadequate price. *Wieler,* 887 S.W.2d at 155. *Accord First State Bank v. Keilman,* 851 S.W.2d 914, 921 (Tex.App.—Austin 1993, writ denied); *Gainesville Oil & Gas Co. Inc. v. Farm Credit Bank of Texas,* 847 S.W.2d 655, 659 (Tex.App.—Texarkana 1993, no writ); *Cocke v. Meridian Sav. Ass'n,* 778 S.W.2d 516, 520 (Tex.App.—Corpus Christi 1989, no writ); *Hunt v. Jefferson Sav. & Loan Ass'n,* 756 S.W.2d 762, 764 (Tex.App.—Dallas 1988, writ denied). In addition, the party attacking the sale must plead and prove any irregularities that rendered the sale invalid. *See Bonilla v. Roberson,* 918 S.W.2d 17, 22 (Tex.App.—Corpus Christi 1996, no writ). "Evidence showing that a better price would have resulted if the sale was conducted in a different manner is required." *Hunt,* 756 S.W.2d at 764; *Bellah v. First Nat'l Bank of Hereford,* 474 S.W.2d 785, 788 (Tex.Civ. App.—Eastland 1971, writ ref'd n.r.e.).

▮▮▮ A foreclosure sale creates serious potential for abuse. The trustee may

---

**6.** The Trustee does not claim that either FSB or Reinhart is liable for conversion.

**922**

conspire with a potential buyer to secure for that buyer the lowest bid, or the mortgagee may take actions that chill the bidding in an attempt to secure the lowest price for itself. *See generally*, 30 Tex. Jur.3d *Deeds of Trust and Mortgages* § 177 (1998). The State of Texas seeks to combat such practices both through statutory law, and by recognizing the common law action of wrongful foreclosure. *See* Tex.Prop.Code Ann. § 51.002 (Vernon 1995). "It is true that any act of an auctioneer, or the party selling, or of third parties as purchasers which prevents a fair, free and open sale, or which diminishes competition and stifles or chills the sale, is contrary to public policy and vitiates the sale." *Gainesville Oil & Gas Co. Inc.*, 847 S.W.2d at 659–60. Thus the whole purpose and operation of the wrongful foreclosure action concerns the foreclosure sale itself: its manner, its fairness, its competitiveness, and its result. *See id.*

■ The Keener Farm Land was sold for fair market value. No contention is made that the bid price for the Keener Farm Land was inadequate; the issue here concerns the propriety of FSB applying the excess proceeds to the Other Notes. The purpose of a wrongful foreclosure claim is to redress irregularities in the sale that cause a "grossly inadequate price." *Musick*, 531 S.W.2d at 587. The court, therefore, concludes that the Trustee's claim of wrongful foreclosure is misplaced.

■ A deed of trust is governed by the same rules of interpretation that apply to contracts. *See Sonny Arnold, Inc. v. Sentry Savings Ass'n*, 633 S.W.2d 811, 815 (Tex.1982); *Alkas v. United Savings Ass. of Texas, Inc.*, 672 S.W.2d 852, 858 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.); *Bonilla*, 918 S.W.2d at 22. The terms and provisions of a deed of trust must be strictly construed. *See Murchi-*

*son v. Freeman*, 127 S.W.2d 369, 372 (Tex. Civ.App.—El Paso 1939, writ ref'd); *Bonilla*, 918 S.W.2d at 23.

■ Texas law dictates that FSB had no right to apply the foreclosure proceeds to debts other than those secured by the deed of trust. *See Knick v. Green*, 545 S.W.2d 269, 272 (Tex.Civ.App.—Waco 1976, no writ); *Allen v. Bonner*, 251 S.W. 585, 586 (Tex.Civ.App.—Austin 1923, no writ); *Rush v. First Nat'l Bank of Amarillo*, 160 S.W. 319, 325–26 (Tex.Civ.App.— Amarillo 1913), *aff'd*, 210 S.W. 521 (Tex. Com.App.1919, judgm't adopted); *Howard v. Schwarz*, 22 Tex.Civ.App. 400, 402, 55 S.W. 348, 349 (1900, no writ). To allow a mortgagee "to apply the proceeds of the sale of the mortgaged property to the payment of an indebtedness not secured by the mortgage, would be to extend and enlarge the mortgage contract, to the wrong and injury of [mortgagor]." *Howard*, 22 Tex.Civ.App. at 402, 55 S.W. at 349; *Accord Knick*, 545 S.W.2d at 272; *Allen*, 251 S.W. at 586. "On this principle, a mortgagee, in the absence of an agreement with the mortgagor, is bound to apply moneys realized from the sales of property covered by the mortgage to the mortgage debt." *Howard*, 22 Tex.Civ. App. at 402, 55 S.W. at 349. The use of foreclosure proceeds to pay off any notes not secured by the mortgage instruments is improper. "That is to say, proceeds of sale of mortgaged property cannot be applied to the payment of a debt not covered by the mortgage, without the consent of the debtor." *Knick*, 545 S.W.2d at 272.

■ Texas law holds that the surplus proceeds from a foreclosure sale belong to the mortgagor. *See Grant v. U.S. Dep't of Veterans' Affairs*, 827 F.Supp. 418, 421 (S.D.Tex.1993); *Byers v. Brannon*, 19 S.W. 1091 (Tex.1892); *Conversion Props. v. Kessler*, 994 S.W.2d 810, 813 (Tex.

App.—Dallas 1999, no pet.); *Bonilla v. Roberson,* 918 S.W.2d 17, 23 (Tex.App.— Corpus Christi 1996, no writ). "Unless otherwise agreed by the parties, the surplus remaining after paying the mortgage debt and the expenses of sale belongs to the mortgagor." *Bonilla,* 918 S.W.2d at 23.

■ Reinhart, as Substitute Trustee, derives his authority wholly from the express provisions of the deed of trust. *See Bonilla,* 918 S.W.2d at 21. Since a foreclosure sale is a harsh remedy under a deed of trust, the sale must be in strict compliance with the provisions and procedures set forth in the deed of trust. *See id.* Consequently, a trustee must strictly comply with the terms of the deed of trust, the provisions of law relative to such a sale, and the details prescribed as to the manner of sale. *See id.*

■ Further, Texas law provides that a trustee must act with "absolute impartiality and fairness" to both parties when performing a foreclosure sale subject to a deed of trust. *Hammonds v. Holmes,* 559 S.W.2d 345, 347 (Tex.1977). The duty owed by the trustee is that of a "special agent for both the debtor and the lienholder" with "a particular legal responsibility." *Peterson v. Black,* 980 S.W.2d 818, 822 (Tex.App.—San Antonio 1998, no pet.).

■ The Deed of Trust provides, on page two entitled "TRUSTEE'S DUTIES," the procedure for the apportionment of any proceeds realized from a foreclosure sale. *See* P.Ex. 1. The Deed of Trust requires any proceeds recovered to be paid in the following:

a. Expenses of foreclosure, including a commission to the Trustee of 5% of the bid;

b. To Beneficiary, the full amount of principal, interest, attorney's fees and other charges due and unpaid;

c. Any amounts required by law to be paid before payment to Grantor; and

d. To Grantor, any balance.

*See* P.Ex. 1. Additionally, the Notice of Foreclosure Sale lists the Keener Farm Land as "Property To Be Sold." *See* P.Ex. 7. The Notice of Foreclosure Sale also states that the principal and accrued interest on the Keener Farm Land Note was $346,810.94. *Id.* Finally, the Foreclosure Sale Deed, dated April 4, 2000, also describes the Keener Farm Land as the only property sold and that the sale realized the sum of $547,200.00. *See* P.Ex. 9.[7]

Accordingly, as prescribed in the Deed of Trust, Reinhart was obligated to: (1) pay the expenses and his commission; (2) pay FSB the full amount of its debt and fees; (3) pay any other amounts required by law to be paid before paying Keener; and (4) then deliver any excess to Keener. *See* P.Ex. 1. Notice was proper and the property was sold to the highest bidder for a sum of $547,200.00. However, instead of following the procedure set out in the

---

**7.** However, both the Notice of Foreclosure Sale and the Foreclosure Sale Deed erroneously include other obligations secured by the Deed of Trust other than merely the Keener Farm Land. The Notice of Foreclosure Sale states that the Deed of Trust provides that it secures the payment of the indebtedness and obligations therein described (collectively, the "Obligations") including but not limited to (1) the promissory note in the original principal amount of $300,000.00, executed by Richard L. Keener and wife, Lana M. Keener, and payable to the order of First State Bank; (2) all renewals and extensions of the note; *and (3) any and all present and future indebtedness of Richard L. Keener and wife, Lana M. Keener to First State Bank.* *See* P.Ex. 7 ¶ 5; *also see* P.Ex. 9. The Deed of Trust secures only Keener Farm Land and does not secure "(3) any and all present and future indebtedness of Richard L. Keener and wife, Lana M. Keener to First State Bank," as erroneously included in the Notice of Foreclosure Sale and Foreclosure Sale Deed. *See* P.Ex. 1.

Deed of Trust, which required Reinhart to pay FSB (the Beneficiary) $346,810.94, and to then deliver the excess proceeds of $200,389.06 to Keener, Reinhart delivered the full amount of $547,200.00, to FSB. Reinhart clearly violated the terms of the Deed of Trust.

### *Conclusion*

The court grants summary judgment in favor of FSB and Reinhart on the Trustee's fraudulent conveyance and wrongful foreclosure claims. In addition, there is no evidence that B.A. Donelson, who was replaced by Reinhart as trustee under the Deed of Trust, is liable on any of the Trustee's claims. Donelson will be dismissed from this suit. The court further concludes that both FSB and Reinhart breached the terms of the Deed of Trust.

The factual question of whether Keener otherwise agreed or consented to application of the surplus proceeds to the Other Notes is disputed, however. Such factual question is material and thereby prevents the court from awarding summary judgment on the Trustee's breach of contract claim. At trial the court will hear evidence on the issue of whether Keener agreed or consented to application of the excess proceeds and, absent such agreement or consent, damages for breach of contract.