# NO. 12-16-00258-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *SHERRY LYNN BADALICH, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE W. SCOTT BURKE, JR. ESTATE, AND AS TRUSTEE OF THE BADALICH FAMILY TRUST, AND CARL BADALICH, INDIVIDUALLY AND AS TRUSTEE OF THE BADALICH FAMILY TRUST, APPELLANTS* | § | *APPEAL FROM THE 402ND* |
| | § | *JUDICIAL DISTRICT COURT* |
| *V.* | | |
| *FIRST NATIONAL BANK OF WINNSBORO, APPELLEE* | § | *WOOD COUNTY, TEXAS* |

---

## *OPINION*

Sherry Lynn Badalich, individually and as independent executrix of the W. Scott Burke, Jr. Estate, and as trustee of the Badalich Family Trust (the Trust), and Carl Badalich, individually and as trustee of the Badalich Family Trust, appeal a summary judgment in favor of the First National Bank of Winnsboro (the Bank) in the amount of $2,277,826.54, postjudgment interest of five percent per annum, and judicial foreclosure of real property owned by the Trust. In two issues, the Badaliches contend that the trial court erred in granting summary judgment and that they raised material issues of fact as to whether the Bank had failed to comply with a bankruptcy refinance agreement. We affirm.

**BACKGROUND**

Between December 30, 2005 and March 30, 2010, the Badaliches signed numerous promissory notes, deeds of trust, extensions of real estate notes and liens, and personal guaranties on real property owned by the Trust to the Bank.[1]  The highest interest rate on any of these notes was 9.25% per annum, and interest at 10% percent per annum for matured unpaid principal on each of the notes.

Beginning in March 2010, the Badaliches were late in making each monthly payment. From December 2010 through July 2012, they made only partial or no payments.  Finally, after August 2012, the Badaliches ceased making any payments to the Bank.

The Bank subsequently filed suit against the Badaliches to enforce the agreements and foreclose on the property.  On December 2, 2013, Carl filed a Chapter 13 petition with the United States Bankruptcy Court in the Southern District of Texas, Corpus Christi Division.  On May 19, 2014, he converted his bankruptcy proceeding to a Chapter 11.  The Bank subsequently sought relief from the automatic stay.[2]  The parties entered into an agreement, as part of an agreed bankruptcy court order, to lift the automatic stay and allow the Badaliches to refinance their notes at 4% interest.  The Badaliches paid $50,000.00 as required by the agreement, which the Bank applied to back taxes and past due interest.

After eighteen months in bankruptcy, and without confirming a plan of reorganization, Carl filed a motion to dismiss his Chapter 11 bankruptcy, stating in the motion that he "has learned that his lender of funds to pay his secured creditors will only provide financing to the debtor not in bankruptcy."[3]  His motion further states that he "believes that he will be able to make suitable arrangements with his bankruptcy creditors through the financing contemplated through his lender."  Based on this motion, the bankruptcy court dismissed Carl's Chapter 11 bankruptcy proceeding on June 29, 2015.

---

[1] The Badaliches executed each of these agreements in various capacities, such as "Sherry Badalich as executrix of her father's estate," "Carl and Sherry Badalich as Trustees of the Badalich Family Trust," and in their individual capacities.  Ultimately, it is undisputed in this appeal that the Trust owns the real estate subject to the promissory notes secured by the deeds of trust.

[2] *See generally* 11 U.S.C.A. § 362 (Westlaw current through P.L. 115-72).

[3] The lender referred to in Carl's motion to dismiss is an unknown third party, and not First National Bank of Winnsboro.

Thereafter, the Bank filed suit in state court to collect on the Badaliches' indebtedness based on the original promissory notes, deeds of trust, extensions, and personal guaranties signed from December 2005 through March 2010. It also sought to foreclose on the real property securing the Badaliches' indebtedness. The Bank eventually filed a motion for summary judgment. As part of the summary judgment evidence, the Bank attached the original promissory notes, deeds of trust, extensions, and guaranties. It also attached evidence establishing the amounts owed and unpaid. The Badaliches opposed the Bank's summary judgment motion with evidence of their own, consisting primarily of Carl's affidavits based on the bankruptcy refinance agreement. The trial court entered a final judgment based on the Bank's motion for summary judgment in the amount of $2,277,826.54 against the Badaliches in their individual and other above-described capacities, and decreed judicial foreclosure against the real property owned by the Trust securing the indebtedness. This appeal followed.

## SUMMARY JUDGMENT

In their first issue, the Badaliches contend the trial court erred in granting summary judgment. Specifically, they contend they raised fact issues relating to their defensive legal theories of accord and satisfaction, estoppel, and novation related to the refinance agreement entered during Carl's bankruptcy proceeding. In their second issue, they contend that they raised material issues of fact with regard to their breach of contract claim against the Bank, also based on the bankruptcy refinance agreement. We will consider these two issues together.

### Standard of Review

We review the trial court's grant of a traditional summary judgment de novo. *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015). The standards for reviewing a motion for summary judgment are as follows:

1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3. Every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in its favor.

*Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

3

The basis for a summary judgment can be a single issue of law. ***City of Houston v. Clear Creek Basin Auth.***, 589 S.W.2d 671, 675 (Tex. 1979). Whether an agreement is legally enforceable is a question of law. ***Advantage Physical Therapy, Inc. v. Cruse***, 165 S.W.3d 21, 24 (Tex. App.—Houston [14th Dist.] 2005, no pet.). A contract or agreement is a promise or set of promises, oral or written, for the breach of which the law gives a remedy or the performance of which the law in some way recognizes as a duty. ***1/2 Price Checks Cashed v. United Auto. Ins. Co.***, 344 S.W.3d 378, 384 (Tex. 2011). When, as here, the trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, the summary judgment will be affirmed on appeal if any of the theories advanced in the motion are meritorious. *See **Carr v. Brasher***, 776 S.W.2d 567, 569 (Tex. 1989).

## Enforceability of the Bankruptcy Refinance Agreement

Once the debtor files a Chapter 11 bankruptcy, a fiduciary is appointed to manage the estate in the interest of the creditors. *See **Czyzewski v. Jevic Holding Corp.***, 137 S. Ct. 973, 978, 197 L. Ed. 2d 398 (2017). This fiduciary, often the debtor, acts as "debtor in possession" of the bankruptcy estate. *See **id***. The estate is comprised of, among other things, all legal or equitable interests of the debtor and property as of the commencement of the case. 11 U.S.C.A. § 541(a)(1) (Westlaw current through P.L. 115-72); ***Rich v. Durie***, 524 S.W.3d 868, 871 (Tex. App.—Tyler 2017, no pet.) (citing ***In the Matter of Seven Seas Petroleum, Inc.***, 522 F.3d 575, 584 (5th Cir. 2008)). During the bankruptcy, the debtor and creditors attempt to negotiate a plan that will govern the distribution of valuable assets from the debtor's estate. ***Czyzewski***, 137 S. Ct. at 978. A Chapter 11 bankruptcy proceeding foresees three possible outcomes: (1) a bankruptcy court confirmed plan, (2) conversion of the case to a Chapter 7 proceeding for liquidation and distribution of the debtor's remaining assets because of the inability to confirm a plan; or (3) dismissal of the Chapter 11 case. ***Id.*** at 979.

Unless the bankruptcy court for cause orders otherwise, the dismissal of a bankruptcy proceeding without approval of a plan "reverts the property of the estate in the entity in which such property was vested immediately before the commencement of the case under this title." 11 U.S.C.A. § 349(b)(3) (Westlaw current through P.L. 115-72). In other words, a dismissal without confirmation of a plan aims to return the parties to the prepetition financial status quo. ***Czyzewski***, 137 S. Ct. at 978; ***Hildebrand v. United States***, 905 F. Supp. 774, 785 (E.D. Cal. 1995). The legislative history of section 349 states that "the basic purpose of subsection 349(b)

4

is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case." *In re Dumontier*, 389 B.R. 890, 896-97 (Bankr. Montana 2008) (citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 337-38 (1977), S. Rep. No. 95-989, 95th Cong., 2nd Sess., 48-49 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6294)).

Section 349(b)(3) "obviously contemplates that on dismissal a bankrupt is reinvested with the estate, subject to all encumbrances which existed prior to the bankruptcy." *In re Keener*, 268 B.R. 912, 919 (Bankr. N.D. Tex. 2001) (quoting *In re Nash*, 765 F.2d 1410, 1413 (9th Cir. 1985)). The rationale for this result is as follows:

> The case law interpreting the effect of a dismissal is consistent with a plain reading of the statute and its legislative history. Since rights that the debtor acquires as a result of bankruptcy are usually an extension of the debtor's ability to abide by terms of the Bankruptcy Code, the debtor who is unwilling or unable to comply with the Code generally should not receive the benefits of bankruptcy once the case is dismissed. When a bankruptcy case is dismissed without the debtor having obtained a discharge, the consequences of the bankruptcy petition are negated, and the parties are restored to their rights and positions as they existed prior to the filing of the bankruptcy case. Unless the court indicates otherwise, the general effect of an order of dismissal is to restore the status quo ante; it is as though the bankruptcy case had never been brought. Dismissal of a bankruptcy case operates to reinstate the status of interests of debtor and his creditors to their status quo ante. To the extent possible, dismissal of [a] bankruptcy petition reverses what has transpired during bankruptcy.

*Id.* at 920 (internal citations omitted). "After an order of dismissal, debtors, debts and property are subject to the general [state] laws, unaffected by bankruptcy concepts." *In re Dumontier*, 389 B.R. at 897.

**Estoppel**

Estoppel prevents one party from misleading another to the other's detriment or to the misleading party's own benefit. *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 486 (Tex. 2017). The elements of equitable estoppel are: (1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations. *Id.*

**Discussion**

The Bank moved for summary judgment based on the original notes, deeds of trust, extensions, and guaranties. The Badaliches responded that the refinance agreement executed during Carl's bankruptcy is an accord and satisfaction or a novation supplanting the prior

agreements affecting the real property at issue. The Badaliches' appellate argument, as they have conceded, depends on the enforceability of the bankruptcy refinance agreement.

Once Carl filed for bankruptcy, he obtained a superior negotiating position that allowed him to obtain a favorable refinance agreement for debts owed by him, his wife, and the Trust to the Bank. The parties recite in the agreement that the Trust owns the property, and that Carl is a beneficiary of the Trust. Carl also is a guarantor of the debts owed by the Trust to the Bank. Moreover, the terms of the refinance agreement clearly bind not only Carl personally, but the Trust as well.[4]

With bankruptcy court approval, Carl subsequently voluntarily dismissed his bankruptcy prior to the confirmation of a bankruptcy plan. A debtor who benefits from the protections provided by the Bankruptcy Code does not retain those benefits when his case is dismissed without confirmation of a Chapter 11 plan resulting in a discharge of his debts. *See* 11 U.S.C.A. § 349(b)(3); *Czyzewski*, 137 S. Ct. at 978; *In re Keener*, 268 B.R. at 920; *Hildebrand*, 905 F. Supp. at 785. Therefore, Carl lost the benefits of this bankruptcy bargain when he dismissed his Chapter 11 bankruptcy. Accordingly, we hold that the bankruptcy refinance agreement is now unenforceable and that the Badaliches and the Bank were returned to their prebankruptcy positions. *See* 11 U.S.C. § 349(b)(3); *see also In re Keener*, 268 B.R. at 920. Without an enforceable refinance agreement, the Bank could proceed to enforce the original notes, deeds of trust, guaranties, and extensions by exercising its state court remedies. *In re Dumontier*, 389 B.R. at 897; *see Gottlieb v. Kest*, 141 Cal. App. 4th 110, 141–42, 46 Cal. Rptr. 3d 7, 28 (2006) (applying Section 349 and holding that because bankruptcy court did not confirm plan prior to dismissal, the debtor's debts and property were subject to general state laws, unaffected by bankruptcy concepts, and therefore creditor could pursue unpaid debt for full amount due).

Because the refinance agreement is unenforceable, we review the summary judgment record before us. The Bank included all of the notes with their accompanying deeds of trust, along with the extensions and personal guaranties, in its summary judgment evidence. Further, the summary judgment evidence includes the payment history of each of the promissory notes.

---

[4] At oral argument, the Badaliches appeared to contend that the bankruptcy refinance agreement is only a partial memorialization of a larger separate refinance transaction directly executed by all of the parties, as opposed to only Carl as part of his bankruptcy. There is no evidence of any such agreement in the record. Rather, the bankruptcy refinance agreement appears to be the complete transaction, and by its express terms, the agreement binds not only Carl, but the Trust as well.

The Badaliches did not object to this evidence. Furthermore, on appeal, the Badaliches concede that the Bank is entitled to be repaid on its loans if we determined that the bankruptcy refinance agreement is unenforceable. Therefore, the trial court properly granted summary judgment in favor of the Bank.

Finally, the Badaliches contend that they raised a fact issue on their estoppel argument. In their response to the Bank's motion for summary judgment, the Badaliches argue that Carl dismissed his bankruptcy proceeding only because he believed the Bank would honor the bankruptcy agreement, and therefore the bank is estopped from denying the refinance agreement.

The Badaliches sole summary judgment evidence supporting their estoppel argument is stated in Carl's affidavit as follows: "In reliance on the agreement the bank and I reached and the bankruptcy court order, I dismissed my Chapter 11 case on June 29, 2015. Had I known the bank would not honor its agreement and obey the agreed order, I would not have dismissed my Chapter 11 bankruptcy." These two sentences only indicate Carl's subjective belief that the Bank would perform the agreement when he dismissed his bankruptcy proceeding. The Badaliches have provided no evidence that the Bank made any representation that it would honor the bankruptcy refinance agreement once Carl dismissed his Chapter 11 proceeding. Without such evidence, the Badaliches have failed to satisfy the first element of equitable estoppel. *See Gulbenkian v. Penn*, 252 S.W.2d 929, 932 (Tex. 1952).

For the above reasons, the Badaliches' first and second issues are overruled.

### DISPOSITION

Having overruled the Badaliches' two issues, the judgment of the trial court is ***affirmed***.

JAMES T. WORTHEN
Chief Justice

Opinion delivered November 15, 2017.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(PUBLISH)

7



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

NOVEMBER 15, 2017

NO. 12-16-00258-CV

**SHERRY LYNN BADALICH, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE W. SCOTT BURKE, JR. ESTATE, AND AS TRUSTEE OF THE BADALICH FAMILY TRUST, AND CARL BADALICH, INDIVIDUALLY AND AS TRUSTEE OF THE BADALICH FAMILY TRUST,**
Appellants
V.
**FIRST NATIONAL BANK OF WINNSBORO,**
Appellee

Appeal from the 402nd District Court

of Wood County, Texas (Tr.Ct.No. 2013-294)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that all costs of this appeal are hereby adjudged against the Appellants, **SHERRY LYNN BADALICH, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE W. SCOTT BURKE, JR. ESTATE, AND AS TRUSTEE OF THE BADALICH FAMILY TRUST, AND CARL BADALICH,**

**INDIVIDUALLY AND AS TRUSTEE OF THE BADALICH FAMILY TRUST**, for which execution may issue, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*