In re: **GREENHAW ENERGY, INC., Debtor(s)**

**W Steve Smith Plaintiff(s)**

**v.**

**Morris R Greenhaw Oil and Gas, Inc, et al Defendant(s).**

**Bankruptcy No. 03–30422.**
**Adversary No. 06–3343.**

United States Bankruptcy Court, S.D. Texas, Houston Division.

Jan. 4, 2007.

Richard L. Fuqua, II, Fuqua & Keim, Houston, TX, for Debtor.

W. Steve Smith, Blanche D. Smith, Houston, TX, Richard H. Parker, Anna Barron, Richard Parker & Associates,

Houston, TX, Trustees for Estate of Greenhaw Energy, Inc.

Rhett G. Campbell, Mitchell E. Ayer, Tye C. Hancock, Thompson & Knight LLP, Houston, TX, for Laughlin and Kenmor Properties.

Barnet B. Skelton, Jr., Houston, TX, for Morris Greenhaw, Individually, and Morris R. Greenhaw Oil and Gas, Inc.

Marcy Kurtz, Bracewell & Giuliani, Houston, TX, for Tommy Warford, Individually, and as Trustee for Greenhaw Oil and Gas.

### *ORDER GRANTING IN PART AND DENYING IN PART GREENHAW'S MOTION TO DISMISS (DOCKET # 53)*

MARVIN ISGUR, Bankruptcy Judge.

On January 6, 2003, Greenhaw Energy, Inc. ("Debtor") filed a petition for chapter 11 bankruptcy. On Schedule D, Debtor listed Morris R. Greenhaw Oil & Gas, Inc. ("Greenhaw Oil & Gas") as a secured creditor holding a deed of trust on oil and gas interests in Erath, Comanche and Eastland Counties.

The property subject to the security interest was purchased by Debtor in February 2001 from Greenhaw Oil & Gas for approximately $1.1 million. In purchasing the properties, Debtor signed a promissory note secured by two deeds of trust. One deed of trust covered particular rights and interests referred to as Desdemona Field. The other covered a 3/4 interest in a Gas Plant and certain real property and leaseholds in Eastland County. Desdemona Field and the 3/4 interest are collectively referred to as "Desdemona."

After Debtor filed bankruptcy, Greenhaw Oil & Gas filed a motion for relief from the stay. The Court entered an agreed order resolving the lift stay motion on March 17, 2003 (docket no. 48). The order stated that Debtor was to pay Greenhaw Oil & Gas $100,000 by May 16, 2003, $25,000 by July 15, 2003, and the remaining balance of the claim by September 15, 2003.[1] In addition, the Debtor was to pay $3,000 on the twelfth day of each succeeding month beginning April 12, 2003, and continuing until the September 15, 2003, payment was made. The $3,000 was characterized as adequate protection payments for use of cash collateral.[2] The agreed order provided if the Debtor failed to timely make any of the payments described in the order, the automatic stay was to lift on the day after the missed payment was due without further order of the Court.

1. In order to determine the total amount due in the September 15, 2003 payment, Greenhaw Oil & Gas was to submit the projected amount to Debtor by July 25, 2003. Debtor was required to submit its projected amount to Greenhaw Oil & Gas by August 4, 2003. If the amounts differ, Debtor was required to pay the lesser amount submitted on September 15, 2003. The difference was to be decided in a hearing held no later than September 1, 2003.

2. The Cash Collateral Order (docket no. 52) provided that Greenhaw Oil & Gas was to be paid $3,000 on or before the twelfth day of each month consistent with the terms of the cash collateral order and the March 17, 2003 agreed stay order. If the Debtor failed to make any payments, the Debtor was to be considered in default and Greenhaw Oil & Gas was entitled to all remedies available under the March 17 order without further order of Court. If there was a default under the cash collateral order or the agreed stay order, Greenhaw Oil & Gas' obligations and Debtor's authority to use cash were to terminate and Greenhaw Oil & Gas was immediately entitled to any remedy available under the March 17 order. If the default was a non-economic default, Debtor was to have fourteen days to cure after being provided notice of the default by Greenhaw Oil & Gas.

The cash collateral order stated that any notice required to be given under the cash collateral order should be addressed to Debtor at Post Office Box 580337, Houston, Texas 77258 with a copy to Richard Fuqua at 2777 Allen Parkway, Suite 480, Houston, Texas 77019. Agreed Order Authorizing Use of Cash Collateral ¶ 33. Neither order provided a valuation method for Desdemona in the event of a default.

After Debtor failed to make the adequate protection payment due on August 12, 2003, Greenhaw Oil & Gas began foreclosure proceedings. The foreclosure sale occurred on October 7, 2003. Notice of the sale and a letter stating an amount due of $441,200, were sent to the Debtor at 12700 N. Featherwood, Houston, Texas 77034 ("Featherwood Address"). The Trustee alleges that of the amount due, $205,316 represented attorney's fees and expenses. At the foreclosure sale, the gas plant was sold first for $175,000. There was a subsequent sale for the balance of the Desdemona Field for $250,000.

The Trustee commenced this adversary proceeding on April 14, 2006, alleging that Debtor had made the August 12, 2003, adequate protection payment. An amended complaint was filed by the Trustee on June 15, 2006. In his amended complaint, the Trustee claimed that the foreclosure sale was avoidable for the following reasons: (1) under § 362 for violation of the automatic stay; (2) under § 549 as an unauthorized post-petition transfer; and (3) as property of the estate subject to turnover under §§ 541 and 542. The Trustee also asserted claims under § 544

for (1) wrongful foreclosure; (2) conspiracy to commit wrongful foreclosure; (3) fraudulent transfer; and (4) conspiracy to commit fraudulent transfer. Further, the Trustee requested attorney fees and injunctions preventing Defendants from disposing of any proceeds from the sale of Desdemona.

The Trustee's belief that Debtor made the August 2003 payment, however, was incorrect. On August 28, 2006, the Trustee appeared before the Court and stipulated that the payment was *not* made. Accordingly, the Court issued an order declaring the same.[3]

Currently pending before the Court is a motion to dismiss and alternatively for summary judgment filed by Morris R. Greenhaw Oil & Gas and Morris R. Greenhaw (collectively "Greenhaw"). The motion was filed prior to the August 28, 2006, hearing. Therefore, the Court first will address what causes of action survive from the Trustee's amended complaint and are subject to the motion to dismiss.

*Surviving Causes of Action in the Trustee's First Amended Complaint*

Based on the Trustee's stipulation that the August 12, 2003, adequate protection payment was *not* made, any arguments that the foreclosure sale violated the automatic stay are now moot. Therefore, the Trustee's assertions that the foreclosure sale should be avoided under §§ 362, 541, 542, and 549 are without merit.

The Trustee also brought causes of action under 11 U.S.C. § 544. These include

---

**3.** After stipulating the payment was not made, the Trustee filed his Second Motion for Leave to Amend Complaint. In his Motion, the Trustee sought to revise and add certain cause of actions. Specifically, the Trustee claimed there were additional facts supporting that a waiver of the timeliness of the August 12, 2003, payment occurred. The

Court held a hearing regarding the Trustee's motion on October 17, 2006. The Court denied the Trustee's motion for leave to amend finding the proposed amendment would add a new cause of action which would ultimately be futile and unduly prejudicial to Defendants.

wrongful foreclosure and conspiracy to commit wrongful foreclosure, and fraudulent transfer and conspiracy to commit a fraudulent transfer.

█ Defendants argue the Trustee is unable to bring these claims under § 544 due to the limitations period stated in § 546. Defendants are correct. The time for the Trustee to assert claims under § 544 has expired. *See* 11 U.S.C. § 544(a). The Court, however, finds it is unnecessary for the Trustee to assert these causes of action under § 544. If these claims are claims of the estate, the Trustee, under § 541, has the authority to pursue these causes of action. *See* 11 U.S.C. § 541(a)(7).

Even though the Trustee has not pled under § 541, the Fifth Circuit has held that courts may look to the substance of pleadings rather than the labels stated in pleadings in determining what relief the movant seeks. *See Armstrong v. Capshaw, Goss & Bowers,* 404 F.3d 933, 936 (5th Cir.2005) (noting district courts must determine the true nature of a pleading by its substance, rather than its labels and stating because movant's "motion to amend his complaint sought to justify his status as an intervenor in federal court, the district court properly treated it as a motion for leave to intervene.") (citing *Edwards v. City of Houston,* 78 F.3d 983, 995 (5th Cir.1996)) (*en banc*) ("[W]e have oft stated that 'the relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label' ") (quoting *Bros. Inc. v. W.E. Grace Mfg. Co.,* 320 F.2d 594, 606 (5th Cir.1963)). The Court in *Edwards* looked to the substance of the plaintiffs' motion filed under the heading of "Objection to Order of Dismissal" and considered the motion as either a motion to alter or amend the judgment or a motion for relief from the judgment. *Edwards,* 78 F.3d at

995. Similarly, the Fifth Circuit has ruled that a "motion for reconsideration," which is not recognized under the Federal Rules, was properly treated as a motion to alter or amend or a motion for relief from judgment. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 173 (5th Cir.1990).

While the foregoing deals with titling pleadings, the Court finds the same principle applicable to the Trustee's complaint. Under the heading "Turnover of Estate Property Pursuant to 11 U.S.C. §§ 541 and 542" the Trustee sought to recover property of the estate based on the theory Defendants violated the automatic stay and, therefore, the transaction was avoidable under § 549. Under the heading "544 Causes of Action" the Trustee asserted that the foreclosure activities "were conducted wrongfully and in bad faith" and that the transfer was a fraudulent transfer resulting from a conspiracy. First Am. Compl. ¶¶ 33—34.

Although the Trustee is now barred by § 546 from asserting wrongful foreclosure and related causes of actions under § 544, by looking to the overall substance of the Trustee's complaint, the Court finds it may consider the Trustee's claims as arising under the Trustee's authority over property of the estate as defined in § 541. In his first amended complaint, the Trustee asserted a claim for turnover of property of the estate. The claim, however, is based on an erroneous assertion by the Trustee that the stay was violated. This assertion, while the basis of the Trustee's claim under § 541, is not a required element for the Trustee to assert the estate's rights under § 541. The fact that the Trustee was incorrect in his belief that the adequate protection payment was made should not otherwise prevent the Trustee from exercising his rights to manage the estate. The Court will, therefore, charac-

terize the Trustee's claims as falling under § 541, as property of the estate.

 Generally, the estate consists of property which the debtor owns at the time of filing the petition. 5 RESNICK & SOMMER, COLLIER ON BANKRUPTCY ¶ 541.01. This includes causes of action. *Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 306 (5th Cir.2001) (citing *In re Educators Group Health Trust*, 25 F.3d 1281, 1283 (5th Cir.1994)). *See In re Equinox Oil Co.*, 300 F.3d 614, 618 (5th Cir.2002) ("Section 541 is read broadly and is interpreted to 'include all kinds of property, including tangible or intangible property' [and] causes of action . . ."). Therefore, if claims exist which are property of the estate at the time of filing, the Trustee becomes the "real party in interest with exclusive standing to assert them." *Wieburg*, 272 F.3d at 306 (citing *In re Educators Group Health Trust*, 25 F.3d at 1284). The confusion in this case concerns the date on which this cause of action arose. The trustee's cause of action—if it is valid—arose post-petition. Accordingly, the Court must determine whether the trustee owns the post-petition cause of action without resort to § 544.

██ The estate is an "active legal enterprise" which can "sue or be sued." *In re Herberman*, 122 B.R. 273 (Bankr. W.D.Tex.1990). Accordingly, causes of action that arise from the administration of the chapter 11 estate are property of the estate. This principle is codified in 11 U.S.C. § 541(a)(7). Section 541(a)(7) states that property of the estate will include "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7).

At the commencement of this bankruptcy case, Debtor listed on Schedule D the property over which the wrongful foreclosure dispute arises. This property became property of the estate the moment Debtor filed for chapter 11 protection. Any claims stemming from this property rightfully belong to the estate. The Trustee is the exclusive party to assert the estate's interest.[4]

Therefore, based on the foregoing, the Court will consider only the Trustee's wrongful foreclosure, conspiracy to commit wrongful foreclosure, fraudulent transfer and conspiracy to commit fraudulent transfer in the Trustee's complaint. Greenhaw filed a motion to dismiss under Rule 12(b)(6) as to wrongful foreclosure, fraudulent transfer, conspiracy, and violation of the automatic stay and § 549 claims. Based on the foregoing, the Court finds the Defendants' arguments regarding the automatic stay and § 549 are now moot. The Court will consider the Defendants' motion to dismiss as to the wrongful foreclosure and conspiracy to commit wrongful foreclosure and fraudulent transfer and conspiracy to commit fraudulent transfer.

*Standard for Motion to Dismiss*

A motion asserting a 12(b)(6) defense allows for dismissal due to a "failure to state a claim upon which relief can be

4. This case presents a somewhat unique situation. While Debtor originally filed under chapter 11, this case was later converted to a case under chapter 7. The alleged wrongful foreclosure occurred on October 7, 2003, after Debtor filed for chapter 11 protection, but prior to the February 2, 2004, conversion of this case to a case under chapter 7. However, courts addressing issues arising from similar circumstances find that property interests acquired while operating under chapter 11, but prior to converting to chapter 7 become property of the estate. *See e.g. In re Lotta Water Land Co.*, 25 B.R. 32, 36 (Bankr.Tex.1982) (The estate acquired an interest in property that "the debtor acquired after the commencement of the Chapter 11 case and prior to the time that it was converted to one under Chapter 7.").

granted." FED. R. CIV. PRO. 12(b)(6). The issue in a 12(b)(6) motion is whether a plaintiff is entitled to offer evidence to support its claim. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). The Court must determine, "in the light most favorable to the plaintiff, whether the complaint states any valid claim for relief." *Cinel v. Connick*, 15 F.3d 1338, 1341 (5th Cir.1994). All well-pleaded allegations contained in the plaintiff's complaint must be accepted by the court as true. *Albright v. Oliver*, 510 U.S. 266, 268, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994). In addition, all facts pled must be specific, not merely conclusory. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir.1992). When evaluating Rule 12(b)(6) motions, the Court should not grant a dismissal "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

### a. Wrongful foreclosure:

The Trustee asserts that the amount received at the foreclosure sale was grossly inadequate and that the foreclosure sale was conducted with a number of irregularities which had the effect of discouraging third parties from bidding. Therefore, the Trustee alleges the sale of Desdemona was the result of a wrongful foreclosure. In response, Greenhaw claims the sale was conducted in accordance with the laws of Texas and in compliance with the Court's agreed stay order.

### 1. Wrongful Foreclosure under Texas law

 Under Texas common law, a debtor may recover for wrongful foreclosure if "a 'defect' or 'irregularity' occurs in the foreclosure process which deters third parties from bidding..." *First State Bank*

*v. Keilman*, 851 S.W.2d 914, 921 (Tex. App.-Austin 1993, pet. denied) (citing *Pentad Joint Venture v. First Nat'l Bank*, 797 S.W.2d 92, 96 (Tex.App–Austin 1990, writ denied)). The Bankruptcy Court for the Northern District of Texas, in *In re Keener*, summarized the requirements for a party to succeed on a claim of wrongful foreclosure:

> The Texas Supreme Court has held that, in order for a finding of wrongful foreclosure, "[t]here must be evidence of irregularity, though slight, which irregularity must have caused or contributed to cause the property to be sold for a grossly inadequate price." *American Sav. & Loan Ass'n of Houston v. Musick*, 531 S.W.2d 581, 587 (Tex.1975). The Texas cases that address this issue all require "irregularities in the foreclosure sale" that result in a grossly inadequate price. *Wieler*, 887 S.W.2d at 155. In addition, the party attacking the sale must plead and prove any irregularities that rendered the sale invalid. *See Bonilla v. Roberson*, 918 S.W.2d 17, 22 (Tex. App.-Corpus Christi 1996, no writ). "Evidence showing that a better price would have resulted if the sale was conducted in a different manner is required." *Hunt*, 756 S.W.2d at 764; *Bellah v. First Nat'l Bank of Hereford*, 474 S.W.2d 785, 788 (Tex.Civ.App.-Eastland 1971, writ ref'd n.r.e.).

*In re Keener v. First State Bank of Stratford*, 268 B.R. 912, 921 (Bankr.N.D.Tex. 2001) (citations omitted). In short, the Plaintiff must show an irregularity in the foreclosure sale as a prerequisite to any recovery for wrongful foreclosure. That irregularity must contribute to an inadequate price.

 When it is alleged that the mortgagee caused irregularities in the foreclosure sale, the Court must first consider the mortgagee's duties and determine whether

the mortgagee complied with its duties as required by statute or the deed of trust. *First State Bank,* 851 S.W.2d at 921 (citing *Pentad,* 797 S.W.2d at 96). If the mortgagee either "(1) fails to comply with statutory or contractual terms, or (2) complies with such terms, yet takes affirmative action that detrimentally affects the fairness of the foreclosure process," the debtor may be able to recover for wrongful foreclosure. *First State Bank* 851 S.W.2d at 921.

A sale of real property under a contract lien must be conducted in accordance with the Texas Property Code § 51.002. The statutory requirements, which form the basis of the current dispute, include that notice is required to be given to the debtor in default "at least 21 days before the date of the sale by ... serving written notice of the sale by certified mail on each debtor who, according to the records or the mortgage servicer of the debt, is obligated to pay the debt." TEX. PROP. CODE § 51.002(b)(3).

### 2. Trustee's allegations of irregularities

The Trustee asserts there were a "number of irregularities which violated contractual, statutory and Court imposed provisions." First Am. Compl. ¶ 23. These alleged irregularities include the following: (1) the Defendants failed to send notice of the sale to the Debtor's last known address; (2) the Defendants overstated the amount due; and (3) the foreclosure sales under the two deeds of trust were held first on the gas plant then on the leases. The Trustee believes if the leases were foreclosed upon first, the gas plant would then have to be returned to the Debtor. Trustee's Resp. ¶ 37. These irregularities, the Trustee asserts, resulted in a grossly inadequate sales price.

The Trustee states that the Featherwood address, to which the notice of foreclosure was sent, was an address that had been vacated almost a year before the notice was issued. Accordingly, the Trustee alleges the Defendants violated § 51.002(b) of the Texas Property Code by failing to send notice to the Debtor at its last known address as shown by the foreclosing party's records.

In their motion to dismiss, the Defendants assert that regardless of whether Featherwood was the proper address, the Debtor received actual notice. Defendants argue that, under Texas law, actual notice is sufficient to meet the statutory requirements of the Texas Property Code.

In support of their assertions, Defendants reference a return receipt attached to the Motion for Summary Judgment filed on May 12, 2006 (docket no. 28, attach. 22). The certified mail receipt shows that Brenda Savell, a director of Debtor, received a letter (docket no. 28, attach. 21) which provided notice of the foreclosure sale. Further, Defendants reference a declaration of Barnet B. Skelton, Jr., counsel for Greenhaw (docket no. 55). Attached to the declaration is a page from the Texas Secretary of State's website showing Brenda Savell as secretary and director of Greenhaw Energy. Therefore, Defendants argue, Debtor had actual knowledge of the foreclosure sale.

The Defendants have pointed to several documents supporting their conclusion that Plaintiffs had actual notice. The Court, however, is not allowed to look beyond the face of the pleadings in ruling on motions to dismiss. *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir.1996) (citing *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir.1992)). Defendants argue that, in appropriate circumstances, documents attached to or referenced in a motion to dismiss may be considered by the Court. *Causey v. Sewell Cadillac–Chevrolet, Inc.,* 394 F.3d 285, 288 (5th Cir.2004)

((citing *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498–99 (5th Cir. 2000)) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.")).

Defendant's assertion that courts may, at times, look to other documents, while technically correct, does not, in these particular circumstances, grant the Court leave to look to documents outside of the pleadings. *Causey* continues to state, "[i]f a court considers materials outside of the pleadings, the motion to dismiss must be treated as a motion for summary judgment under Rule 56(c)" *Causey,* 394 F.3d at 288 (citing *Tuley v. Heyd,* 482 F.2d 590, 592 (5th Cir.1973)). Further, the Fifth Circuit has stated that while a court may permit affidavits and other evidence to be entered into the record, the court may not base its judgment on matters outside of the pleading in granting dismissals pursuant to Rule 12(b)(6). *See Test Masters Educational Services, Inc. v. Singh,* 428 F.3d 559, 570 n. 2 (5th Cir.2005) (citing *Davis v. Bayless,* 70 F.3d 367, 372 n. 3 (5th Cir.1995)).

Discovery was previously opened in this adversary proceeding only to the extent necessary to determine whether the August 2003 adequate protection payment was made. At the hearing on October 17, 2006, the Trustee inquired as to whether discovery would now be opened generally. The Court stated that it would rule on any 12(b)(6) motions prior to opening discovery. However, the Court stated that motions for summary judgment would not be ruled on until there was a reasonable opportunity for discovery. Because discovery has not yet been opened, the Court will not treat Greenhaw's motion to dismiss as a motion for summary judgment. The Court, therefore, will not consider any documents outside of the pleadings until discovery has been opened and Plaintiffs have had a reasonable time to respond accordingly.

■ A mortgagee seeking to foreclose must comply with the Texas Property Code and send appropriate notice to the Debtor's last known address. The fact that notice was sent to the Featherwood address rather than the address contained in the cash collateral order raises a question as to whether or not the mortgagee complied with the statute. If the mortgagee failed to comply with the statute, the mortgagee may be found to have caused an irregularity in the foreclosure sale. If an irregularity is found, the Court may then look to the adequacy of the foreclosure price to determine if the sale was the result of a wrongful foreclosure. The Trustee has asserted that subsequent to the foreclosure, which generated $450,000, Greenhaw was able to sell Desdemona Field for approximately $10,000,000.

■ As stated above, in evaluating 12(b)(6) motions, the Court must accept as true all facts pled and can only grant dismissal if it appears beyond doubt plaintiff can prove no facts to support his claim. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court will not convert this motion to a motion for summary judgment and consider documents outside of the pleadings. Texas law requires only a slight irregularity in a foreclosure sale for the Court to determine that foreclosure was wrongful. *In re Keener* 268 B.R. at 921. The Trustee has alleged several specific irregularities and has supplied an argument, which if found true, would tend to show the price offered at the foreclosure was grossly inadequate. Based on the Trustee's pleadings, the Court finds the Trustee has sufficiently stated a claim. Therefore, Greenhaw's Motion to Dismiss in regards to wrongful foreclosure is denied.

### b. Conspiracy to commit wrongful foreclosure

The elements for conspiracy are: "(1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful or overt acts; and (5) resulting damages." *Abdeljalil v. City of Fort Worth*, 55 F.Supp.2d 614, 624 (N.D.Tex.1999) (citing *Meineke Discount Muffler v. Jaynes*, 999 F.2d 120, 124 (5th Cir.1993)). Furthermore, "mere conclusory allegations of conspiracy cannot, absent reference to material facts, state a substantial claim ..." of conspiracy. *Saenz v. Herndon*, 2006 WL 3438665, *2 (N.D.Tex. Nov.29, 2006) (citing *Hale v. Harney*, 786 F.2d 688, 690 (5th Cir.1986)).

Pleadings for conspiracy to commit wrongful foreclosure are governed by Rule 8. Under Rule 8, all that is required for a plaintiff to set forth his complaint is a "short and plain statement of the claim that the pleader is entitled to relief." FED. R. CIV. P 8(a)(2). "The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim." *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

In support of his argument that Defendants participated in a conspiracy, the Trustee asserts that the alleged inadequate price, ($450,000 received in foreclosure as compared to an allegedly proper amount of $10 million), and the alleged intricate scheme which Defendants followed in disguising and concealing the true value establishes Defendants' conspiracy to commit the wrongful foreclosure. The Trustee states the following in articulating the alleged path Desdemona Field followed after the foreclosure sale:

> To distance the Desdemona Field from Debtor, and Trustee upon conversion of Debtor's case to Chapter 7, Greenhaw Oil & Gas purportedly sold one half and then the other one-half of the Desdemona Field to Laughlin for about $660,000 and Laughlin conveyed the Desdemona Field to Square One and then Laughlin (also believed to be in conjunction with Greenhaw) sold Square One to Cano Petroleum, Inc. ("Cano") for $4 million cash and 888,888 shares of Cano (then valued at $4 per share and now valued at closer to $10 per share), all of which was paid by Cano, as directed, to Kenmor, the owners of which were and are Greenhaw and Laughlin, with an additional 4,000 shares to Hornback.

First Amended Complaint ¶ 20. Based on the alleged irregularities in the sale, as discussed above, the alleged grossly inadequate price, the identification of persons involved and the allegedly circuitous transfer of Desdemona field after foreclosure, the Court finds the Trustee has provided a basis for an assertion that a conspiracy may have occurred.

However, as the Defendants assert in their motion, a corporation and its agents cannot, as a matter of law, conspire with each other. Generally, agents and the corporation are considered to constitute "a single 'person' and therefore cannot form a conspiracy." *Fojtik v. First Nat. Bank of Beeville*, 752 S.W.2d 669, 673 (Tex.App.-Corpus Christi 1988, writ denied), 775 S.W.2d 632 (Tex.1989) (per curiam) (citing *Christopher v. General Computer Systems*, 560 S.W.2d 698 (Tex.Civ. App.-Dallas 1977, writ ref'd n.r.e.)). "[T]he acts of a corporation's agents are deemed to be acts of the corporation itself." *Fojtik*, 752 S.W.2d at 673 (citing *Nelson Radio Supply Co. v. Motorola*, 200 F.2d 911, 914 (5th Cir.1952)). An agent, however, may be found to conspire with a corporation if he acts outside of his status as a corporate agent. *See Yetman v. Cleary*, 2003 WL 22909280 * 4 (Tex.App.-

Houston [1 Dist.] 2003), *Fojtik,* 752 S.W.2d at 673.

The above cases address an agent's ability to form a conspiracy with the corporation alone or with other corporate agents. The present facts are different. Morris Greenhaw is alleged to have conspired, not solely with the corporation, but also with third parties outside of the corporation. In addition, the benefits of the alleged conspiracy were to flow to Morris Greenhaw, not Greenhaw Oil & Gas. Fletcher's Cyclopedia of the Law has provided some insight into a director's liability in such circumstances. Fletcher's states:

> [A] corporation cannot conspire with its officers, agents or employees when they are acting solely for the corporation. The corporation may be held liable for a conspiracy, however, where its officers, agents or employees were acting for personal reasons, or where they have an independent personal stake in achieving the object of the conspiracy, or where an independent third party conspired with the corporation.

10 WILLIAM MEADE FLETCHER ET AL., FLETCHER CYCLOPEDIA OF THE LAW OF CORPORATIONS § 4884 (West 2006) (internal citations omitted). The Northern District of Illinois, in interpreting this passage and the cases cited therein, found that "corporate directors can never be personally liable for damages stemming from an unlawful conspiracy between the corporation and independent third parties where the corporate directors were acting solely on behalf of the corporation and maintained no independent personal stake in the object of the conspiracy." *Mehl v. Navistar Intern. Corp,* 670 F.Supp. 239, 241 (N.D.Ill.1987). The principle that a director can never conspire with a corporation when acting on behalf of the corporation, however, is a somewhat different issue than that presently before the Court. The issue before

the Court is the ability of a corporation to conspire with its directors when the directors have an independent stake in the controversy and outside third parties are involved. If the corporate directors are not acting solely on behalf of the corporation, it is possible that directors may be found to be in conspiracy with the corporation.

The irregularities which form the basis of the Trustee's wrongful foreclosure claim are that notice did not comply with statutory requirements, the amount due was overstated, and the foreclosure sales on the two deeds of trust were conducted in an improper order. In asserting these irregularities, the Trustee does not differentiate between the actions of Greenhaw Oil & Gas and Morris Greenhaw individually. Specifically, the Trustee states that "[o]n August 29, 2003, Greenhaw/Greenhaw Oil & Gas purported to give notice to the Debtor of the default...and the balance due on the note of $441,200." First Amend. Compl. ¶ 19. Additionally, the Trustee states "Warford was instructed by Greenhaw/Greenhaw Oil & Gas to proceed in his capacity as Trustee under the Deeds of Trust with the posting, noticing and holding of Trustee's Sales of Desdemona..." *Id.* The only allegations against Greenhaw which do not include Greenhaw Oil & Gas appear when the Trustee is laying out the alleged path Desdemona followed post-foreclosure. Morris Greenhaw is implicated as being part owner of entities through which Desdemona and funds generated from the sale of Desdemona were channeled.

The basis of the Trustee's claim of wrongful foreclosure arises from irregularities in the foreclosure sale. In all allegations of irregularities, the Trustee specifically refers to instructions regarding the sale as given by "Greenhaw/Greenhaw Oil & Gas." Therefore, as to the actual conduct

648

surrounding the foreclosure sale, the Trustee has not shown facts supporting that Morris Greenhaw, individually, acted in any capacity other than that of a corporate agent.

However, Morris Greenhaw may have had a personal stake in the outcome of the conspiracy apart from any benefit to Greenhaw Oil & Gas. The Trustee has alleged that Morris Greenhaw, individually, was part of a conveyance, subsequent to the foreclosure sale, which generated $4 million in cash and 888,888 in shares valued between $4 and $10 per share. The proceeds from the sale were supposedly paid to Kenmor Properties. Morris Greenhaw is alleged to be an owner of Kenmor Properties.

While Morris Greenhaw may have been acting as an agent in conducting the foreclosure sale, the fruits of the sale were to benefit him individually, not Greenhaw Oil & Gas. According to the Trustee's allegations, Morris Greenhaw used the corporation in conjunction with third parties to benefit himself. The law has differentiated between an agent's duties when acting for the corporation as opposed to when the agent has a personal stake in the outcome of the conspiracy. *See* 10 William Meade Fletcher et al., Fletcher Cyclopedia of the Law of Corporations § 4884 (West 2006); *Mehl* 670 F.Supp. at 241. A corporation may be found liable for conspiracy with its agents when the agents are acting for their own benefit. *See id.*

Therefore, even though Morris Greenhaw appears to have been working in a purely corporate capacity in ordering the foreclosure sale, the Trustee has alleged that post-foreclosure Morris Greenhaw would benefit from the alleged conspiracy, individually. The Trustee has alleged facts to support a claim that Morris Greenhaw may fall within the exception to the generally accepted principle that a corpo-

ration cannot conspire with its agents. If Morris Greenhaw was to benefit individually, he may be found liable for conspiracy.

Defendants' motion to dismiss the conspiracy to commit wrongful foreclosure as to Morris Greenhaw, individually, is therefore denied. In addition, the Court finds that the alleged path Desdemona followed post-foreclosure, the naming of the parties involved, Morris Greenhaw's actions to allegedly benefit himself, and the alleged inadequacy of price are sufficient to state a claim that a conspiracy involving Greenhaw Oil & Gas may have occurred. The Defendants' motion to dismiss as to Greenhaw Oil & Gas is denied.

c. *Fraudulent transfer and conspiracy to commit fraudulent transfer*

Defendants argue that the Trustee has not pled and cannot plead a valid fraudulent transfer claim, and therefore, the Complaint fails to state a claim upon which relief may be granted and must be dismissed. The Court agrees. Neither the Bankruptcy Code nor applicable Texas state law provide the Trustee with a basis for asserting fraudulent transfer or conspiracy to commit fraudulent transfer. The transfer was made under the authority of this Court's agreed stay order. Additionally, the Debtor was not the party to make the transfer, and, therefore, could not possess the requisite intent or otherwise be subject to Texas fraudulent transfer law. *See* Tex. Bus. & Com. Code Ann. § 24.005. The Defendants' motion to dismiss the fraudulent transfer and conspiracy to commit fraudulent transfer claims is granted.

*Conclusion*

The Defendants' motion to dismiss is granted as to the fraudulent transfer and conspiracy to commit fraudulent transfer

causes of action. As to wrongful foreclosure and conspiracy to commit wrongful foreclosure, the motion is denied. All other claims in the Trustee's complaint are now moot.

On January 17, 2007, at 10:00 a.m. the Court will conduct a scheduling conference. At least two business days prior to the hearing, the parties shall file a proposed scheduling order.