# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 22, 2024

Lyle W. Cayce
Clerk

No. 22-20536

IN THE MATTER OF SOUTH COAST SUPPLY COMPANY,

*Debtor*,

BRIAR CAPITAL WORKING FUND CAPITAL, L.L.C., *as assignee of South Coast Supply Company*,

*Appellant*,

*versus*

ROBERT W. REMMERT,

*Appellee*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:18-CV-2867

---

Before STEWART, DENNIS, and WILSON, *Circuit Judges*.

JAMES L. DENNIS, *Circuit Judge*:

This appeal arises out of a Chapter 11 Bankruptcy petition and raises a res nova issue for our circuit. Because we find that preference claims arising under 11 U.S.C. § 547 may be sold, we REVERSE the district court's dismissal for lack of subject matter jurisdiction and REMAND for further proceedings.

No. 22-20536

## I. Background

South Coast Supply Company ("South Coast"), an industrial products distributor founded in 1972, began experiencing financial issues in 2016, which it later attributed to mismanagement. South Coast was forced to borrow $800,000 from Robert Remmert, its then-CFO, pursuant to a loan agreement. South Coast issued forty-seven checks pursuant to the terms of the loan agreement, totaling over $320,628.04, until Remmert resigned from South Coast. After his resignation, on October 17, 2017, Remmert sent a demand letter requesting $405,261.87 to satisfy the loan, less than the actual $578,199.04 left on the original loan. On October 20, 2017, South Coast filed a voluntary Chapter 11 petition for bankruptcy in the Southern District of Texas.

South Coast continued to operate its business as a debtor-in-possession, and the bankruptcy court appointed J. Patrick Magill as South Coast's Chief Restructuring Officer ("CRO"). At the time the CRO was appointed, Briar Capital Working Fund Capital, L.L.C. ("Briar Capital") was South Coast's sole secured lender and had filed proof of claim in the bankruptcy proceeding, thereby asserting a claim for $2,563,191.07. Briar Capital's proof of claim stated that it had a lien on property valued at $3,926,263.88.

Five months into the bankruptcy case, South Coast was not generating enough cash flow to remain liquid and cash-flow-positive. South Coast sought post-petition debtor-in-possession ("DIP") financing. It requested and received an order from the bankruptcy court authorizing it to obtain DIP financing from Solstice Capital, LLC ("Solstice"). The order specified that Briar Capital would have lien priority over Solstice as to property obtained by South Coast prior to the date on which Solstice advanced DIP financing to South Coast. Solstice, by contrast, would have lien priority over Briar Capital

2

as to property obtained after that date. By doing so, the bankruptcy court found that Briar Capital's interests in its collateral were sufficiently protected. Additionally, Briar Capital received junior liens on all Solstice collateral. Around this time, South Coast also filed the instant lawsuit against Remmert attempting to "avoid" more than $300,000 of allegedly preferential transfers made to Remmert right before the bankruptcy proceedings were initiated under 11 U.S.C. § 547, and to recover, i.e., claw back, the value of the avoided transfers under 11 U.S.C. §550.

After obtaining DIP financing, South Coast filed its first proposed Chapter 11 plan. The first plan proposed to sell all South Coast's "intangible assets," including intellectual property, to Solstice for $500,000. Solstice also agreed to pay up to $200,000 to satisfy claims entitled to administrative treatment under the Bankruptcy Code. Additionally, the first plan provided for the transfer of some of South Coast's property to Briar Capital to satisfy Briar Capital's claim but did not provide for any payment of Briar Capital's administrative expenses incurred in participating in the bankruptcy proceeding, which are traditionally prioritized and paid in full. The first plan also provided that unsecured creditors would receive $500,000 in cash.

Briar Capital objected to the first plan, asserting the plan did not offer it fair compensation. South Coast and Briar Capital settled their issues and agreed to a second, modified plan. The second plan provided that Briar Capital would abandon its security interest in $700,000 of sale proceeds that South Coast planned to distribute to other creditors and would also waive its claim to recover administrative expenses incurred in participating in the bankruptcy proceedings. In exchange, Briar Capital received South Coast's interest in this pending preference action against Remmert, which was seeking to avoid more than $300,000 of allegedly preferential transfers.

At the confirmation hearing of the second plan, the CRO testified about the value of the assets to be transferred to Briar Capital, stating that "it was very difficult to give a concrete valuation of any kind of inventory," that the estimate of the inventory transferred was "our best guess," and that he was uncertain and concerned about the real value of the collateral. The CRO also testified that the value of the accounts receivable transferred to Briar Capital was $400,000, but it was possible they could be worth less. The CRO specifically testified that because of South Coast's settlement with Briar Capital, the second proposed plan allowed the $700,000 of proceeds from the sale of South Coast's assets to be distributed to unsecured creditors and administrative claimants, rather than to Briar Capital, the secured creditor. Remmert objected on a limited basis, arguing that the plan should explicitly provide that only this one existing preference lawsuit would be assigned to Briar Capital. The bankruptcy court approved the plan over Remmert's objection, finding that the plan complied with the Bankruptcy Code, was proposed in good faith, and was not forbidden by law.

The order confirming the plan contained a paragraph titled "Assignment of Claims," which provided that "[a]s of the Effective Date of the Plan, [South Coast] and the bankruptcy estate assign and convey to Briar Capital and/or authorize to prosecute on their behalf" the preference action against Remmert attempting to avoid payments made prior to the filing of the bankruptcy petition. The plan itself specifically states that "[a]s of the Effective Date of the Plan, [South Coast] and the estate assign and convey to Briar Capital and/or authorizes Briar Capital to prosecute on their behalf all of [sic] their potential claims against Robert W. Remmert," including the currently pending preference lawsuit. The plan also provided that Briar Capital was permitted to keep any amount it recovered from Remmert, even if the recovery exceeded the amount it was owed to satisfy its debt, stating

No. 22-20536

that "[a]ny and all recoveries and proceeds of such recoveries shall be solely the property of Briar Capital."

As a result of the plan's approval, Briar Capital was substituted as assignee of South Coast in this preference action against Remmert, leading to this instant suit. The parties litigated the case from January 2019 until August 2022. Eleven days before trial, Remmert filed a motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that Briar Capital lacked standing to prosecute the preference action. The district court agreed, holding that since a successful recovery would not benefit South Coast's estate or its unsecured creditors, Briar Capital lacked standing to bring the preference claim against Remmert as a representative of the estate under 11 U.S.C. § 1123(b)(3)(B) of the Bankruptcy Code. Acknowledging the absence of caselaw from our circuit, the district court followed cases from bankruptcy courts ruling that outright sales of preference actions under 11 U.S.C. § 547 are impermissible. Therefore, the district court dismissed the suit for lack of subject matter jurisdiction. This timely appeal followed.

## II. Standard of Review

We review a dismissal for lack of subject matter jurisdiction de novo, applying the same standards as the district court. *In re S. Recycling, LLC*, 982 F.3d 374, 379 (5th Cir. 2020); *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018). "The burden of proving subject matter jurisdiction lies with the party asserting jurisdiction, and it must be proved by a preponderance of the evidence." *In re S. Recycling, LLC*, 982 F.3d at 379 (citing *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 781 (5th Cir. 2012) ("The plaintiff must prove by a preponderance of the evidence that the court has jurisdiction based on the complaint and evidence.")).

No. 22-20536

### III. Analysis

While Briar Capital raises several issues on appeal, this appeal turns on whether preference claims—a type of avoidance action—may validly be sold.[1]

*A. Preference Claims Arising Under 11 U.S.C. § 547 May Be Sold*

Briar Capital argues the district court erred in finding that preference claims cannot be sold, and thus, that it did not have standing to bring this claim. The district court, relying on various bankruptcy court opinions in light of the "absence of explicit authorization from the Fifth Circuit for sales of 11 U.S.C. § 547 avoidance actions," found that Briar Capital did not have standing, and dismissed its claims for lack of subject matter jurisdiction. "Avoidance actions are claims to avoid a transfer of property by the debtor that was made voidable by the Bankruptcy Code. Avoidance actions include claims to recover fraudulent transfers and certain preferential transfers made too close in time to the filing of bankruptcy." *In re Simply Essentials, LLC*, 78 F.4th 1006, 1008 (8th Cir. 2023). At issue is whether a preference action, a specific type of avoidance action, may be sold. This question of whether preference claims may be sold is indeed a novel issue for this circuit. The Fifth Circuit has expressly reserved the question of whether a debtor-in-possession may sell the power to avoid preferences under 11 U.S.C. § 547. *In re Moore*, 608 F.3d 253, 261 (5th Cir. 2010) ("A split of authority exists as to whether the trustee may sell causes of action that arise from his avoidance powers."). We hold that 11 U.S.C. § 547 preference actions may be validly

---

[1] The parties also disagree about the applicability of res judicata or claim preclusion in this case. Briar Capital contends that the August 2018 order confirming the Chapter 11 reorganization plan should have preclusive effect. Remmert responds that this argument was not properly preserved for appeal. We do not address this issue as we decide this appeal on other grounds.

No. 22-20536

sold, and that Briar Capital has standing to bring this action for the following reasons.

* * *

As a general bankruptcy rule, a debtor-in-possession, "after notice and a hearing, may use, sell, or lease . . . *property of the estate*." Title 11, United States Code, Section 363(b)(1) (emphasis added).[2] Property of the estate, in turn, is defined in 11 U.S.C. § 541. Briar Capital argues preference claims are property of the estate—and therefore can be sold by a debtor-in-possession under § 363(b)(1)—because they fall within the definitions of property of the estate listed in §§ 541(a)(1) and 541(a)(7). We address each subsection in turn.

Briar Capital first asserts that preference claims fall in the general, broad definition of property of the estate in § 541(a)(1) relying, in part, on the Supreme Court's broad reading of § 541(a)(1) in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205 (1983). Section 541(a)(1) defines "property of the estate" to include "all legal or equitable interests of the debtor in property as of the commencement of the case." In *Whiting Pools, Inc.*, the Court held that the reorganization estate included property of the debtor that had already been seized by a creditor before the debtor filed for reorganization. *Id.* at 205. In interpreting "property of the estate," the Court stated that § 541(a)(1) "is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code." *Id.* The

---

[2] As the bankruptcy court did not appoint a trustee in this case, and South Coast continued to operate its business as a debtor-in-possession, the rights and powers referenced in this opinion are those of a debtor-in-possession. *See* 11 U.S.C. § 1107 ("[A] debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties . . . of a trustee").

Court also looked to the congressional report on the Bankruptcy Code and stated that the "congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate." *Id.* at 204. The Fifth Circuit has echoed this sentiment, asserting that "[t]he scope of property rights and interests included in a bankruptcy estate is very broad: The conditional, future, speculative, or equitable nature of an interest does not prevent it from being property of the bankruptcy estate." *In re Kemp*, 52 F.3d 546, 550 (5th Cir. 1995). Additionally, courts have generally noted that this broad definition includes causes of action. *In re Greenshaw Energy, Inc.*, 359 B.R. 636, 642 (Bankr. S.D. Tex. 2007) (citing *In re Equinox Oil Co.*, 300 F.3d 614, 618 (5th Cir. 2002) ("Section 541 is read broadly and is interpreted to 'include all kinds of property, including tangible or intangible property' [and] causes of action[.]")).

Reading § 541(a)(1) broadly, as we must, preference actions fall within its scope. A preference action is property, as it is a right of action created by federal bankruptcy law to avoid a transfer of property. *In re Moore*, 608 F.3d at 257–58 ("[T]he term 'all legal and equitable interests of the debtor in property' is all-encompassing and includes rights of action as bestowed by either federal or state law."). Preference actions are a mechanism in the Bankruptcy Code by which additional property is made available to the estate, fitting squarely within the *Whiting Pools* definition. A successful preference claim voids the allegedly preferential transfer and returns that property to the estate. *In re Tusa-Expo Holdings, Inc.*, 811 F.3d 786, 791–92 (5th Cir. 2016) ("If a trustee establishes each of the requirements of § 547(b), the transfer is a preference, which must be returned to the bankruptcy estate . . ."). Additionally, claims to avoid allegedly preferential transfers arise with the filing of the bankruptcy petition, making them property that the debtor has an interest in as of the commencement of the case. *See In re Simply*

*Essentials, LLC*, 78 F.4th 1006 (holding that avoidance actions are property of the estate under 11 U.S.C. § 541(a)(1) and (a)(7)). Thus, preference actions plainly fit the statutory definition of "property of the estate" and may validly be sold under § 363(b).

Briar Capital also argues that preference actions generally may qualify as property of the estate under § 541(a)(7). Section 541(a)(7) provides that property of the estate includes "any interest in property that the estate acquires after the commencement of the estate." Briar Capital contends that "a right of action that accrues post-petition is estate property if it is created with or by property of the estate or related to or arises out of property that is already part of the estate." Similarly to Section 541(a)(1), the Fifth Circuit has held that "Congress enacted § 541(a)(7) to clarify its intention that § 541 be an all-embracing definition and to ensure that property interests created with or by property of the estate are themselves property of the estate." *In re TMT Procurement Corp.*, 764 F.3d 512, 525 (5th Cir. 2014). Preference actions clearly qualify as "property of the estate" under this section. *In re Simply Essentials, LLC*, 78 F.4th 1006 ("the avoidance actions clearly qualify as property of the estate under subsection (7)"). Keeping in mind our own precedent mandates a broad reading of § 541(a)(7), it is apparent that "[t]he Bankruptcy Code makes these assets available to the estate after the commencement of the case." *Id.* Thus, we also hold that the preference actions qualify as property of the estate under § 541(a)(7).

Beyond the clear statutory language, we find that our decision is bolstered by other courts across the country. We join the Eighth and Ninth Circuits in finding that preference claims are property of the estate that can be sold. *In re Simply Essentials, LLC*, 78 F.4th at 1011 ("Chapter 5 avoidance actions are property of the estate"); *In re Lahijani*, 325 B.R. 282, 288 (9th Cir. 2005) ("While there is some disagreement among courts about the exercise by others of the trustee's bankruptcy-specific avoiding power causes

of action, the Ninth Circuit permits such actions to be sold or transferred.") (first citing *In re P.R.T.C., Inc.*, 177 F.3d 774, 781 (9th Cir. 1999); and then citing *In re Prof'l Inv. Props. of Am.*, 955 F.2d 623, 625–26 (9th Cir. 1992)). In so deciding, the Eighth Circuit addressed Remmert's chief argument in this case—that the avoidance powers are unique powers belonging to the trustee and that should not have been sold to someone who would not exercise those powers for the benefits of all creditors. Specifically, the appellants in *In re Simply Essentials* argued that "allowing the sale of avoidance actions would violate the trustee's fiduciary duty or undermine the purpose of avoidance actions." *In re Simply Essentials, LLC*, 78 F.4th at 1010. In response, the court succinctly explained that the trustee's fiduciary duties require it to maximize the value of the estate, which may include and even require the sale of an avoidance action. *Id.* The court held that allowing the sale of avoidance actions "is consistent with the congressional intent behind including a fiduciary duty to maximize the value of the estate." *Id.*

The Ninth Circuit has also found that all avoidance powers, including preference actions, may be sold. *In re P.R.T.C., Inc.*, 177 F.3d 774. A Bankruptcy Appeals Panel within the Ninth Circuit rejected the appellants' argument that the estate received no benefit where there was no specific portion of future recoveries reserved for the estate. *In re Lahijani*, 325 B.R. at 288 ("We reject appellants' argument that the avoiding power causes of action should not have been sold to one who would not exercise the powers for the benefit of all creditors.").[3] It decided that "[t]he benefit to the estate

---

[3] While Bankruptcy Appeals Panel decisions are not binding precedent, we find the rationale persuasive. *See In re Silverman*, 616 F.3d 1001, 1005 n.1 (9th Cir. 2010) (noting that while decisions from the Bankruptcy Appeals Panel are not binding, they are persuasive authority given their expertise in bankruptcy law).

in such circumstances is the sale price, which might or might not include a portion of future recoveries for the estate." *Id.* at 287.

In rejecting these arguments, the courts took a broad view of what benefits the estate, which we adopt here. This logic of maximization of the estate applies even under circumstances like these, where a creditor is not pursuing the claim for the benefit of all creditors. In this case, Briar Capital waived the right to recover administrative expenses and its security interest in $700,000 of sales proceeds, in exchange for the right to pursue this preference claim. Although Briar Capital does not owe any percentage of the possible recovery in this case to the estate, its waiver of the right to collect administrative expenses and its release of its claim to $700,000 are concrete benefits to the estate. Interpreting the Bankruptcy Code to allow the sale of preference actions does not undermine the purpose of avoidance actions. Rather, it is consistent with the trustee's duty to maximize the estate.

Remmert also raises concerns about equity, a general policy underlying the Bankruptcy Code. Specifically, Remmert argues that since "Briar Capital would be pursuing claims only for itself" it "would be potentially allowed to recover more than rightfully due to it." We have already addressed this policy concern in a similar context[4] by reiterating that the sale of avoidance actions "will not necessarily undermine core bankruptcy principles. In approving such sales, bankruptcy courts must ensure that fundamental bankruptcy policies of asset value maximization and equitable distribution are satisfied. Bankruptcy courts must make those decisions on a case by case basis in light of the factual circumstances." *In re Moore*, 608 F.3d at 262 n.18; *see also In re Lahijani*, 325 B.R. at 288 ("The

---

[4] While the *In re Moore* court did not address the sale of preference actions, the policy arguments underlying its holding apply with equal force in this case.

court's obligation in § 363(b) sales is to assure that optimal value is realized by the estate under the circumstances.").[5] Allowing the sale of preference actions will grant bankruptcy courts more flexibility in distributing assets, maximize the value of the bankruptcy estate, and in turn, allow for more equitable distribution of assets.

In fact, allowing for the sale of preference claims may be the most equitable option. For example, in some cases, the estate may not have sufficient funds to pursue preference actions. By assigning the actions to creditors who may be able to pursue the actions, the bankruptcy court and the debtor have more flexibility in distributing the remaining assets and can most effectively maximize the bankruptcy estate. *In re Simply Essentials, LLC*, 78 F.4th at 1010 ("When an estate cannot afford to pursue avoidance actions, the best way to maximize the value of the estate is to sell the actions."); *see also In re P.R.T.C.*, 177 F.3d at 777 (allowing the sale where the estate did not have the funds to pursue the avoidance claims, but believed they may be valuable). Maximization of the bankruptcy estate certainly benefits all creditors, as there are more assets to be distributed. Here, the estate received a benefit by Briar Capital's release of its claim to $700,000 as well as all administrative expenses, and the subsequent approval of the bankruptcy plan in exchange for the rights to the preference claim. We reject Remmert's blanket contention that allowing the sale of preference actions clashes with general principles of equity articulated in the Bankruptcy Code and instead find that bankruptcy courts are capable of determining what is

---

[5] *In re Moore* cited this proposition—that allowing the sale of preference actions gives bankruptcy courts flexibility to maximize the value of the estate—favorably in dicta, stating that "[b]ankruptcy courts may determine, in any given situation, whether a sum-certain offer maximizes estate assets or whether, instead, an offer that includes a portion of future recoveries is more appropriate." *In re Moore*, 608 F.3d at 262 n.19 (citing *In re Lahijani*, 325 B.R. at 288).

the most equitable under the specific circumstances of each case, which may include selling preference claims. As Briar Capital validly purchased the claim outright, it has standing to pursue the lawsuit as purchaser of the claim.

*B. One Need Not Be a Representative of the Estate to Pursue a Validly Purchased Preference Claim*

Though we find that avoidance actions are "property of the estate" which can be sold, Remmert still argues Briar Capital lacks standing to pursue such claims because it is not a "representative of the estate." The district court had two related findings. First, it found that under § 1123(b)(3)(B), a statute by which a third party may pursue a claim belonging to the estate, Briar Capital was not a representative of the estate and had no authority to pursue this claim under this particular provision of the Bankruptcy Code. Secondly, the district court found that preference claims could not be sold, and so Briar Capital did not have standing to pursue this claim as a purchaser. Thus, it concluded that Briar Capital did not have standing under either avenue. Because we find that preference claims can be sold, we hold that Briar Capital has standing to pursue this claim as a purchaser of the claim regardless of whether it is a "representative of the estate."

Remmert appears to argue that the "representative of the estate" issue is dispositive: Briar Capital is not a representative of the estate and thus, has no standing to bring the preference claim.[6] Remmert's view is that even if preference claims are found to be property of the estate which may be sold,

---

[6] While not explicit in Remmert's brief, at oral argument we asked Remmert "if this claim is property of the estate, and property can be sold or conveyed . . . do they have to be a representative of the estate?" Remmert's counsel responded "they do." Remmert also stated in supplemental briefing to this Court that while one issue is whether avoidance actions are property which can be sold, a second issue is "when such a sale will confer standing because the purchaser's responsibilities qualify it as a 'representative of the estate.'"

since they are unique powers entrusted to the estate under the Bankruptcy Code, there ought to be an additional requirement on purchasers of these claims: that they must be representatives of the estate to have standing to pursue the claim. Briar Capital, contrastingly, argues that these issues are "exclusive and independent." We find that Briar Capital has the more compelling argument. Whether Briar Capital is a "representative of the estate" is irrelevant to this appeal.

This conclusion is supported by the plain text of the Bankruptcy Code. Title 11, United States Code, Section 1123(b)(3) states that a Chapter 11 bankruptcy plan *may* provide for the "settlement or adjustment of any claim or interest belonging to the debtor or the estate" or "the retention or enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose of any such claim." On the other hand, 11 U.S.C. § 363 provides that a debtor-in-possession "after notice and a hearing, may use, sell, or lease . . . property of the estate." Remmert relies upon 11 U.S.C. § 1123(b)(3), arguing that Briar Capital's failure to meet the requirements of this section is fatal to its standing argument. This reliance is inapposite. The Bankruptcy Code provides different mechanisms by which a debtor-in-possession may liquidate its assets. There is no requirement in 11 U.S.C. § 363 that the purchaser of a piece of the estate's property also be a representative of the estate, only that the debtor-in-possession give notice and hold a hearing. These requirements were met in this case and the bankruptcy court found that the plan complied with the Bankruptcy Code, was proposed in good faith, and maximized the value of the estate. There is no additional requirement on the purchaser of a preference claim to qualify as a representative of the estate to have standing to pursue the validly purchased claim. In holding that preference claims may be sold, we also hold that the purchasers of preference claims have standing to pursue them.

## IV. Conclusion

14

No. 22-20536

We hold that preference actions may be sold pursuant to 11 U.S.C. § 363(b)(1) because they are property of the estate under 11 U.S.C. §§ 541(a)(1) and (7). And, even if Briar Capital does not qualify as a representative of the estate, it has standing to pursue the preference claim as it validly purchased the claim outright. The district court therefore erred in finding that Briar Capital lacked standing to bring this claim. We REVERSE and REMAND for further proceedings.